IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DESIGN GAPS, INC., | ) | Civil Action No.<u>2:23-cv-197-RMG</u> |
| DAVID GLOVER, Individually and Officer of | ) | |
| Design Gaps, Inc., and | ) | |
| EVA GLOVER, Officer of Design Gaps, Inc. | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     vs. | ) | **COMPLAINT** |
| | ) | |
| DISTINCTIVE DESIGN & CONSTRUCTION, | ) | |
| LLC d/b/a Distinctive Design LLC, | ) | |
| BRYAN REISS, Individually and President of | ) | |
| Distinctive Design LLC, | ) | |
| WENDY REISS, Individually and Vice President | ) | |
| of Distinctive Design & Construction, LLC | ) | |
| SHELTER, LLC | ) | |
| d/b/a Shelter Custom-Built Living, | ) | |
| RYAN BUTLER, Individually and Owner of | ) | |
| Shelter Custom-Built Living, | ) | |
| JENNY BUTLER, Individually and Design | ) | |
| Coordinator Shelter Custom-Built Living, and | ) | |
| KACIE M. HIGHSMITH as Trustee of the Kacie | ) | |
| M. Highsmith Trust | ) | |
| | ) | |
|     Defendants. | ) | JURY TRIAL DEMANDED |
| _____ | ) | |

      Plaintiffs Design Gaps, Inc., David Glover and Eva Glover (individually referred to herein

as "Design Gaps," "Plaintiff David Glover" and "Plaintiff Eva Glover," respectively, and

collectively referred to herein as "Plaintiffs") seeks damages, profits, treble damages, attorneys'

fees, costs, and a permanent injunction against Defendants Distinctive Design & Construction,

LLC d/b/a Distinctive Design LLC ("Distinctive Design"), Defendant Bryan Reiss in his

individual capacity and capacity as President of Distinctive Design ("Defendant Bryan Reiss"),

Defendant Wendy Reiss in her individual capacity and capacity as Vice President of Distinctive

Design ("Defendant Wendy Reiss"), Shelter, LLC d/b/a Shelter Custom-Built Living ("Shelter"), Ryan Butler in his individual capacity and capacity as Owner of Shelter ("Defendant Ryan Butler"), Defendant Jenny Butler in her individual capacity and capacity as Design Coordinator for Shelter ("Defendant Jenny Butler"), and Defendant Kacie M. Highsmith as Trustee for the Kacie M. Highsmith Trust ("Defendant Highsmith Trust"), where all Defendants may collectively be referred to herein as "Defendants," in association with infringement under the Copyright Act, arising out of certain Defendants' use of visual designs and drawings created by Plaintiffs, and certain South Carolina common law and statutory claims including tortious interference with a contract and unfair competition in violation of the South Carolina Unfair Trade Practices Act,

## THE PARTIES

1.    Plaintiff Design Gaps, Inc. is a North Carolina corporation registered as a foreign corporation in South Carolina with a principal place of business located at 1804 Crowne Commons Way, Suite D-1, Johns Island, South Carolina 29455.

2.    Plaintiff David Glover in his capacity as individual and an Officer of Design Gaps, Inc. has a place of business located at 1804 Crowne Commons Way, Suite D-1, Johns Island, South Carolina 29455.

3.    Plaintiff Eva Glover in her capacity as an Officer of Design Gaps, Inc. has a place of business located at 1804 Crowne Commons Way, Suite D-1, Johns Island, South Carolina 29455.

4.    Defendant Distinctive Design & Construction, LLC d/b/a Distinctive Design LLC is a South Carolina limited liability company having a place of business located at 1460 Mossy Branch Way, Mount Pleasant, South Carolina 29464.

5.    Defendant Bryan Reiss, in his individual capacity and capacity as President of

Distinctive Design LLC, has a place of business located at 1460 Mossy Branch Way, Mount Pleasant, South Carolina 29464.

6.     Defendant Wendy Reiss, in her individual capacity and capacity as Vice President of Distinctive Design & Construction LLC, has a place of business located at 1460 Mossy Branch Way, Mount Pleasant, South Carolina 29464.

7.     Defendant Shelter, LLC d/b/a Shelter Custom-Built Living is a South Carolina limited liability company having a place of business located at 895 Island Park Drive, Suite 203, Daniel Island, South Carolina 29492.

8.     Defendant Ryan Butler, in his individual capacity and capacity as Owner of Shelter Custom-Built Living, has a place of business located at 895 Island Park Drive, Suite 203, Daniel Island, South Carolina 29492.

9.     Defendant Jenny Butler in her individual capacity having an address at 895 Island Park Drive, Suite 203, Daniel Island, South Carolina 29492.

10.     Defendant Kacie M. Highsmith as Trustee of the Kacie M. Highsmith Trust has a mailing address of 376 Ralston Creek Street, Daniel Island, South Carolina 29492.

## NATURE OF ACTION

11.     This action arises under 17 U.S.C. § 101 *et seq.*, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 2201 and certain statutory and common law of the State of South Carolina including tortious interference with a contract.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to 17 U.S.C. § 101 *et seq.*, the copyright laws of the United States, in particular, 17 U.S.C. § 106 with respect to exclusive rights subject to copyright protection and 17 U.S.C. § 102(a)(8) with respect to the protection of pictorial,

graphic, and sculptural works or visual works specifically design works in association with custom products for home construction; 15 U.S.C. §§ 1051 *et seq.*, the Lanham Act, 28 U.S.C. § 1331; 28 U.S.C. § 1331 and § 1338(a); and 28 U.S.C. § 1331, federal question.

13.     Supplemental jurisdiction of this Court is invoked over the claims that arise under the statutory and common law of the State of South Carolina pursuant to 28 U.S.C. § 1367(a) since such claims are closely related to the federal claims and form a part of the same case or controversy.

14.     Distinctive Design in connection with Defendant Bryan Reiss and Defendant Wendy Reiss, and Shelter in connection with Defendant Ryan Butler and Defendant Jenny Butler transact business in South Carolina, advertise their goods and services in South Carolina, and sell and distribute their goods and services through in person contacts in South Carolina, online websites and other agents with the reasonable expectation that such goods and services are to be used or consumed in South Carolina and such goods and services are used or consumed in South Carolina. Defendant Highsmith Trust through Kacie Highsmith as Trustee of Defendant Highsmith Trust have purchased said goods and services from these named Defendants that is the basis of this lawsuit. For at least these reasons, the Court has personal jurisdiction over the Defendants.

15.     Venue is proper in this District for at least the reasons that Defendants, either individually and/or cooperatively, conduct business in this District, Defendants purposefully avail themselves to this District through the sale of goods and services offered for homes to residents of this District or residents of this District purchase goods and services from these Defendants in this District. Hence, such sales of goods and services offered with or purchased for homes in South Carolina subjects Defendants to personal jurisdiction in this District.

## FACTUAL BACKGROUND

A.    **Contracts in Dispute**

16.    Kacie M. Highsmith ("Kacie Highsmith") along with Dr. Jason Highsmith ("Dr. Highsmith"), Kacie M. Highsmith's husband (Kacie M. Highsmith and Dr. Highsmith collectively referred to herein as "the Highsmiths"), had earlier contracted with A Closet Case in Daniel Island to design and install the his-and-her master closets sometime in July 2020 at the Highsmith's residence located at 376 Ralston Creek Street, Daniel Island, South Carolina ("Residence"). Unhappy with the A Closet Case quality soon after the A Closet Case installation, the Highsmiths contacted Design Gaps who had installed Downsview Kitchens cabinetry for the master bathroom and closets in the Highsmith's previous home a few years prior to this installation. (A true and correct copy is attached hereto as Exhibit A.)

17.    The contracts in dispute in this case involve two contracts entered into by the Highsmiths in August and September of 2020 with Design Gaps to design and install various cabinet systems and the master closets ("Contracts") at the Residence. The first contract, dated August 18, 2020, was for $234,602.35 and was executed by Kacie Highsmith, Ryan Butler on behalf of Shelter, the contract, and Design Gaps to provide cabinets in the kitchen, pantry, office, mudroom, various vanities, laundry, and game room bar at the Residence ("Main House Cabinet Contract"). (A true and correct copy is attached hereto as Exhibit B.) The second contract, dated August 18, 2020, and signed September 6, 2020, was for $97,634.59 and was executed only between Dr. Highsmith and Design Gaps to provide his-and-her master closets at the Residence ("Master Closet Contract"). (A true and correct copy is attached hereto as Exhibit C.) The Contracts were silent with respect to any completion time or date.

18.    The Contracts did not provide that the Highsmiths as buyers retained any

intellectual property rights including copyright protections for any technical drawings developed pursuant to the work.

**B.**     **Timeline of Events**

19.     Upon information and belief, the Highsmiths began working with Defendant Jenny Butler and Shelter to provide new or renovated version of the mud room, full guest bathroom, walk-in pantry and office space for Defendant Highsmith, master vanities and master morning bar at the Residence on or around June 2020.

20.     Defendant Jenny Butler had engaged Plaintiff David Glover in email communications concerning the work indicating that "I would like to order cabinetry with you on June 22nd or 23rd if that is possible with your schedule/workload." Defendant Jenny Butler also attached the architect's as-built plans for layout of the Residence.

21.     Defendant Jenny Butler also indicated that her preference was to "use whatever cabinet line that has the quickest turnaround time" and further indicated that "8 weeks is our completion time."

22.     On June 19, 2020, Plaintiff David Glover communication to Defendant Jenny Butler that "if a high gloss is involved it will be an acrylic slab (limited color selections) this would enable us to fabricate it … i.e. shorter lead times." Plaintiff David Glover further indicated that "[i]f a gloss lacquer custom color then Downsview would give the best results" and stated "[w]e'll see where the selections land."

23.     On July 5, 2020, Plaintiff David Glover sent an email communicating his changes to the architect's layout and the reasoning behind such changes. Defendant Highsmith responded that same day with "[l]ove the new plan!" She further indicated to Defendant Ryan Butler copied on the email "[c]an we reframe" and she further thanked Plaintiff David Glover for providing the

new plans.

24.     Defendant Ryan Butler responded via email stating "I agree … kitchen layout is much better." Defendant Ryan Butler also indicated that "[t]here are many complexities with pulling this design off structurally" and he would "need to get a structural engineer on site to see if this is feasible."

25.     Plaintiff David Glover emailed a quote to Kacie Highsmith, Defendant Jenny Butler, Defendant Ryan Butler and Brad Richter, the onsite construction engineer, for a custom lacquer solid color for Downsview Kitchen cabinetry installed for "$152,267.83." Plaintiff David Glover further indicated that "our inhouse cabinet would be approximately $133,511.83" without any indication of lead time.

26.     Following receipt of the Main House Cabinet Contract and the order deposit check in August 2020, Design Gaps placed an order with Artigiano, LLC ("Artigiano") to begin supplying cabinetry for the contract. Artigiano acknowledged the order in early October 2020 and delivered all the base cabinets for the Master House Cabinet Contract on October 14, 2020. Design Gaps had installed all based cabinets along with mockup panels for templating countertops on October 23, 2020.

27.     Between the time of installation of the based cabinets in October 2020 through December 2020, construction at the Residence provided by others was delayed including delivery of countertops and the floor finishing for the kitchen; unfinished family room and delays with the new steel exterior doors and windows; with missing countertops, coffee system appliance, and La Cornue French range.

28.     Installation of the kitchen countertops was completed around December 26, 2020. However, the built up edges were clamped with no waterfall ends, appliances were missing,

7

flooring was unfinished, and painting of the walls and trim not completed.

29.     On January 5, 2021, the master vanity countertop was installed, which now allowed for the countertop upper units to be set along with the mirror plywood substrate to be placed.

30.     On January 14, 2021, Kacie Highsmith and Dr. Highsmith transferred the Residence to Kacie M. Highsmith, Trustee of Defendant Highsmith Trust that was dated December 18, 2020. Since there are no assignment provisions in the Design Gaps Contracts, Defendant Highsmith Trust is not an assigned party to the Contracts.

31.     On January 19, 2021, Defendant Jenny Butler sent an email to Defendant Bryan Reiss of Distinctive Design attaching the Design Gaps drawings and designs for the main house cabinetry and the master closets both of which are subject to copyright protection. Defendant Jenny Butler did not request, and Design Gaps did not provide consent for the transfer of such drawings to Defendant Bryan Reiss or Distinctive Design.

32.     On January 22, 2021, Kacie Highsmith in her capacity as Trustee for Defendant Highsmith, Defendant Jenny Butler and Defendant Bryan Reiss met at the Residence, upon information, for identifying a plan for the use of Design Gaps copyrighted works.

33.     On February 19, 2021, Plaintiff David Glover did a walk-thru of the Residence with Defendant Ryan Butler and developed a detailed punch list of the items to be completed so that Design Gaps could receive final payment for the products provided and services rendered at the Residence.

34.     On March 2, 2021, after Andrew Walden ("Walden"), counsel for Shelter and the Highsmiths, initially emailed Plaintiff David Glover, Plaintiff David Glover indicated that "we look forward to completing the project as soon as possible and receiving full payment from your clients."

35.     On March 3, 2021, Plaintiff David Glover emailed Shelter and Kacie Highsmith in her capacity as Trustee for Defendant Highsmith Trust that all materials on site at the Residence that could be installed had been installed.

36.     On March 7, 2021, the remaining parts for the Residence to be supplied by Design Gaps were delivered to Fine Grit for finishing and confirmed with Fine Grit that such parts would be ready for pick up on March 15, 2021.

37.     On March 10, 2021, Walden and Plaintiff David Glover exchanged emails where Plaintiff David Glover raised his concern that the Highsmiths and Shelter intended to breach the Contracts. Plaintiff Glover contacted Fine Grit to place the finishing work on the parts for the Residence on hold until Walden confirmed that Design Gaps was to complete the project pursuant to the Contracts. On that same day, once Walden confirmed the project was to be completed, Plaintiff David Glover notified Fine Grit to proceed with finishing the parts. Fine Grit did indicate that the parts would now be ready by March 31, 2021.

38.     A substantial number of parts including the horizontal and vertical shelving units for the laundry room, open shelving units for the office, three doors for the pantry drilled for hardware, all closet end panels, closet doors, guest entry parts, vanity parts, and master toilet parts were delivered the Residence on March 12, 2021. The cost of finishing these parts was $6,625.98.

39.     On or about March 16, 2021, Defendant Bryan Reiss emailed Defendant Ryan Butler with a work estimate that included pricing.

40.     On March 19, 2021, Fine Grit indicated that they would not have availability to complete the parts for the Residence as promised, and the parts needed to be picked up from their shop.

41.     On March 21, 2021, Defendant Bryan Reis provided a cad drawing of the master

closet for the Residence that was dated March 21, 2021, that was the same as or substantially similar to Design Gaps' copyrighted work for the master closet. For example, the unique floor plan of both closes, the lower band of drawers at the bottom, the intermediate break between hanging and upper area and the vertical dimensions were the same.

42.    Defendant Bryan Reiss has admitted that he received the copyright drawings for the main house cabinetry and the master closets that were sent by Defendant Jenny Butler. The differences, which are considered standard architectural features that are not subject to protection include the method used to have no void corners, and the use of open shelving instead of shelving having doors above the cabinet.

43.    On March 22, 2021, Design Gaps picked up the unfinished parts at Fine Grit and delivered them to Jeff Salich ("Salich"), another parts finisher, who had indicated they would be ready by March 31, 2021. However, on April 8, 2022, Design Gaps retrieved the parts from Salich who had not performed any work on them. The parts were then delivered to Artisan Cabinetry for finishing.

44.    The parts were picked up from Artisan Cabinetry and delivered to the Residence on April 21, 2021. However, the purse display columns were sent back to be resprayed at Artisan Cabinetry.

45.    On April 25, 2021, Plaintiff David Glover emailed Defendant Highsmith informing her of the issues associated with finishing the parts and indicating the purse display columns were being resprayed by the finisher.

46.    Plaintiff Glover delivered the back-ordered drawer glides and LED lighting drivers to Design Gaps' installer who installed the purse display on May 1, 2021.

47.    On May 4, 2021, Kacie Highsmith in her capacity as Trustee for Defendant

Highsmith Trust sent a web inquiry to Downsview Kitchens, Design Gaps' primary cabinet supplier for 29 years indicating Plaintiff David Glover "has taken our money and not provided the product and service he promised." Defendant Highsmith, pursuant to the lists expressly included in the Contracts, was fully aware that Design Gaps did not provide Downsview Kitchens Cabinetry at the Residence.

48.    On May 8, 2021, Plaintiff David Glover emailed Kacie Highsmith in her capacity as Trustee for indicating that nothing in her purchase included Downsview Kitchens and the goods that were listed in the Contracts was for the purpose of keeping the price within a $200,000 budget. Plaintiff David Glover also advised Kacie Highsmith that she had a total outstanding balance of $67,301.17 due to Design Gaps. Plaintiff David Glover also indicated that if she was dissatisfied with the qualified installers he has used in the installation, he would be happy to review and coordinate with qualified installers to be recommended by Defendant Ryan Butler to allow them to complete the installation compensated by deducting an approved reasonable installation amount from the outstanding balance. Plaintiff David Glover finally indicated to Kacie Highsmith "[s]incerely at this point I do not know if Design Gaps will be able to make you happy and I am open to discussing an amicable solution."

49.    Notwithstanding Plaintiff David Glover's proposal to reach an amicable solution with Kacie Highsmith, without Plaintiff David Glover's prior knowledge, Kacie Highsmith in her capacity as Trustee of Defendant Highsmith Trust and Defendant Bryan Reiss scheduled an appointment for May 17, 2021, to "review scope and get final fixes on order."

50.    Walden and Plaintiff David Glover communicated via email on May 14, 2021, concerning the Defendants' termination of Design Gaps access to the residence.

51.    It was eventually discovered that Distinctive Design as coordinated through

Defendant Bryan Reiss was to receive $182,828.00 for the replacement of the master closets using Premier Custom-Built Cabinets and the master morning bar with Prestige Wood Products.

**C.**     **Plaintiffs' Cabinetry and Closet Designs and Technical Drawings**

52.     Plaintiff David Glover has developed and authored cabinetry and closet designs known as the main house cabinet designs ("Main House Cabinet Designs") and the master bathroom closet designs ("Master Bath Closet Designs) published in technical drawings that are included as Exhibits D and E, respectively, with the respective titles of the Exhibits being "Main House Cabinet Drawings" and "Master Bath Closet Drawings." The Copyright Certificate of Registration for these designs and drawings is included in Exhibit F. Design Gaps, an employer for hire, has retained all rights, title and interests in said designs and drawings.

53.     The Main House Cabinet Designs and the Master Bath Closet Designs (collectively referred to herein as "Plaintiffs' Designs") are original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States, which, indeed, have been registered with the United States Copyright Office. The Plaintiffs' Designs each were created in 2020 and has VAu1-462-768 as the registration number. Plaintiffs' Designs have an effective date of registration of March 30, 2022.

54.     Design Gaps, an employer for hire of Plaintiff David Glover, is the author of Plaintiffs' Designs. Both Design Gaps and Plaintiff David Glover retain all rights and permissions with respect to the copyright in the Main House Cabinet Designs and the Master Bath Closet Designs. Pursuant to 17 U.S.C. § 106, as owner of the Copyrights, Design Gaps possesses the exclusive right to reproduce the copyrighted works, prepare derivative works based upon the copyrighted works, distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending.

55.     Commencing on the date of first publication, and consistently thereafter, Plaintiff David Glover has consistently made Defendants aware of Design Gaps' continued ownership in Plaintiffs' Designs.

**C.     Defendants' Unauthorized Use of Plaintiffs' Designs and Technical Drawings**

56.     Without authorization from the copyright owners, Defendant Jenny Butler emailed Defendant Bryan Reiss the technical drawings for Plaintiffs' Designs intending that Defendant Bryan Reiss would use these in the work that he was to do for the Highsmiths. Therefore, Defendant Jenny Butler's actions allowed Defendant Bryan Reiss to engage in copyright infringement using the technical drawings having Plaintiffs' Designs. Upon information and belief, in his capacity as owner of Shelter, Defendant Ryan Butler individually and on behalf of Shelter, approves of and allows such contributory and vicarious infringing actions taken by Defendant Jenny Butler.

57.     While Petitioners included copyright infringement in a counterclaim against Shelter in an arbitration proceeding that preceded this lawsuit, the arbitrator dismissed this claim allegedly for Petitioners' failure to show a registration certificate for the copyrighted material. Therefore, Petitioners raise the claim of contributory and vicarious copyright infringement against Shelter herein.  In support of their client the Highsmiths, Shelter authorized providing Defendant Brian Reiss the technical drawings for Plaintiffs' Designs intending that Defendant Bryan Reiss would use these in the work that he was to do for the Highsmiths. Therefore, Shelter's actions allowed Defendant Bryan Reiss to engage in copyright infringement using the technical drawings having Plaintiffs' Designs.

58.     Upon information and belief, Defendant Jenny Butler was encouraged to send the technical drawings having Plaintiffs' Designs by Defendant Highsmith in her capacity as Trustee

for Defendant Highsmith Trust. Therefore, Defendant Highsmith's communication in her capacity as Trustee for Defendant Highsmith Trust enabled Defendant Bryan Reiss to engage in copyright infringement using the technical drawings having Plaintiffs' Designs.

59.     On behalf of Distinctive Design, Defendant Bryan Reiss used Plaintiffs' Designs in performing cabinetry and closet work at the Residence. Upon information and belief, Defendant Bryan Reiss was fully aware that the technical drawings he received from Defendant Jenny Butler included Plaintiffs' works subject to copyright protection. Such designs were either the same as or substantially similar to Plaintiffs' Designs illustrated in the technical drawings he received from Defendant Jenny Butler. The use of Plaintiffs' Designs at the Residence constituted direct infringement of Plaintiffs' works subject to copyright protection published in the technical drawings that Defendant Bryan Reiss received from Defendant Jenny Butler. Upon information and belief, in her capacity as Vice President of Distinctive Design, Defendant Wendy Reiss individually and on behalf of Distinctive Design, approves of and allows such infringing actions taken by Defendant Bryan Reiss.

**D.     Shelter's and Defendant Ryan Butler's False Advertising of Plaintiffs' Designs and the True Origin and Source of Plaintiff Glover's Designs and Design Services**

60.     As provided herein, Plaintiffs' Designs have been and are used for marketing and advertising on the Shelter's, Defendant Ryan Butler's, and, upon information and belief, Defendant Jenny Butler's websites, and, upon information and belief, used in the eventual sale and construction of homes and the renovation of homes to prospective homeowners and buyers of such services.

61.     Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have repeatedly and willfully misrepresented and continue to misrepresent the true origin and source of cabinet and closet designs created and revised by Plaintiff Glover, and falsely claiming to be the designer of

these associated designs that were, in fact, created by Plaintiff Glover. Such designs include the construction specifications, appliances, lighting, plumbing, electrical, installation, and all components associated with the design and placement of cabinetry and closets in the home, and, in particular, the arrangement of such components to lead to the finished cabinetry and closet systems in the home. Such components are fully represented in the technical drawings provided by Plaintiffs.

62.     Because a designers' success in winning clients, depends on what they can show has been accomplished, Plaintiff Glover has a strong interest in defending his reputation for creativity and preventing a false claim that Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have done the work that Plaintiff Glover, in fact, has done.

63.     Shelter has characterized the work performed at the Residence with the name "Ralston Creek 2" since, apparently, this was the second home construction and/or remodeling performed on Ralston Creek Street in Daniel Island, South Carolina. The contracts associated with the work to be performed by Plaintiffs at Ralston Creek 2 have been included in Exhibits B and C.

64.     Exhibit B is the Main House Cabinet Contract that includes the work the Plaintiffs designed, order parts for, and mostly completed for the kitchen, pantry, office, guest vanity, mudroom, master vanities, purse display, master morning bar, Carter's vanity, laundry, and game room bar.  The Main House Cabinet Contract include paragraph 16, which was commonly included in the Design Gaps contracts that provides, *inter alia*:

> "[a]ny promotional use by others depicting the cabinetry and design will reference Design Gaps, Inc. as the supplier and designer of the said area" (hereinafter "Promotional Use Clause").

65.     Defendant Ryan Butler along with Kacie Highsmith executed the Main House Cabinet Contract.

66.     The plans for the kitchen can be found on pages 1-6 of the Main House Cabinet Drawings included in Exhibit D that have been registered in the United States Copyright Office (see Certificate of Registration included as Exhibit F). The three-dimensional renderings of the kitchen assembled by the Plaintiffs as part of the construction plan for Ralston Creek 2 have been included in Exhibit G.

67.     Upon information and belief, Shelter and Defendant Ryan Butler have promoted the Ralston Creek 2 kitchen on their website and on BuildZoom.com, a digital marketplace that connects property owners to licensed contractors throughout the United States who can do and complete construction projects for them.

68.     Shelter is featured on BuildZoom.com at the website included in Exhibit H.[1] Upon selecting the image labeled "Ralston Creek 2," which has twenty-four (24) photographs, the two views of the kitchen for Ralston Creek 2 found among these photographs are also included on the last two pages of Exhibit H. These photographs of the kitchen are the same as that represented in the technical drawings found in Exhibit D and the three-dimensional kitchen renderings found in Exhibit G that were designed and installed by Plaintiffs. However, as otherwise required by the Promotional Use Clause, nothing is included in these photographs that references "Design Gaps, Inc." or Plaintiff David Glover.

69.     Under the "Projects" webpage accessible from Shelter's website, projects are identified that, upon information and belief, have been initiated and managed by Shelter. The webpage found under Projects of Shelter's website has been included in Exhibit I.[2]

---

[1] www.buildzoom.com/contractor/shelter-custom-built-living/photos accessed January 6, 2023.
[2] sheltercustombuiltliving.com/projects/ accessed January 6, 2023.

70.    "Bayley Street 1" is a project identified on the Shelter Projects webpage included in Exhibit I. Pursuant to the contract included in Exhibit J, Shelter had engaged Plaintiffs to design, acquire materials, and perform the installation of the cabinetry for the kitchen, butlery, and bar for the Bayley Street 1 project. Paragraph 16 of this contract also includes a Promotional Use Clause.

71.    The technical drawings and three-dimensional renderings for the design developed by Plaintiffs for the Bayley Street 1 project have been included in Exhibit K. The webpages included in Exhibit L include photographs that have been accessed through the link provided for "Bayley Street 1" on the Shelter Projects webpage and respectively show the kitchen and partial view of the butlery and the bar for the Bayley Street 1 project.[3] The kitchen, butlery, and bar in these photographs are the same as that represented in the technical drawings and the three-dimensional renderings of Exhibit K that were designed and installed by Plaintiffs. However, as otherwise required by the Promotional Use Clause, nothing is included in these webpages that references "Design Gaps, Inc." or Plaintiff David Glover as the designer or installer of the kitchen, butlery, or bar.

72.    Under the "Press" webpage accessible from Shelter's website, online that include Shelter's projects are identified that, upon information and belief, have been performed by Shelter. The webpage found under Press of Shelter's website has been included in Exhibit M.[4]

73.    The Architectural Digest Winter 2021 edition is accessible from Shelter's website and has been included in Exhibit N.[5] This edition of the Architectural Digest features the Bermuda Isle 1 project and shows an image of the kitchen for the project. However, this article in the

---

[3] sheltercustombuiltliving.com/2021/10/01/bayley-street-1/ accessed January 4, 2023.
[4] sheltercustombuiltliving.com/press/ accessed January 6, 2023.
[5] sheltercustombuiltliving.com/architectural-digest-winter-2021/ accessed December 26, 2022.

Architectural Digest does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover.

74.    The Charleston Style and Design Summer 2021 edition is accessible from Shelter's website and has been included in Exhibit O.[6] This edition of Charleston Style and Design features the Bermuda Isle 1 project and shows images of the kitchen and the bar for the project. However, this article in Charleston Style and Design does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover.

75.    The Charleston Home+Design Winter 2022 edition is accessible from Shelter's website and has been included in Exhibit P.[7] This edition of Charleston Home+Design features the Bermuda Isle 1 project and shows images of the kitchen for the project. However, this article in Charleston Home+Design does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover.

76.    "Lesesne Street 3" is a project identified on the Shelter Projects webpage included in Exhibit I. Pursuant to the contract included in Exhibit Q, Jenny Butler and, upon information and belief, Shelter had engaged Plaintiffs to design, acquire materials, and perform the installation of the cabinetry for the kitchen of the Lesesne Street 3 project. Paragraph 16 of this contract also includes a Promotional Use Clause.

77.    The technical drawings and three-dimensional renderings for the design developed by Plaintiffs for the Lesesne Street 3 project have been included in Exhibit R.The webpage included in Exhibit S includes a photograph that has been accessed through the link provided for

---

[6] sheltercustombuiltliving.com/charleston-style-and-design-summer-2021/ accessed December 26, 2022.
[7] sheltercustombuiltliving.com/charleston-home-design-winter-2022/ accessed December 26, 2022.

"Lesesne Street 3" on the Shelter Projects webpage and shows the kitchen for the Lesesne Street 3 project.[8] The kitchen, in this photograph is the same as that represented in the technical drawings and the three-dimensional renderings of Exhibit R that were designed and installed by Plaintiffs. However, as otherwise required by the Promotional Use Clause, nothing is included in the webpage that references "Design Gaps, Inc." or Plaintiff David Glover as the designer or the installer of the kitchen.

78.    Defendant Jenny Butler had represented to Plaintiff David Glover that any work he performed on the Lesesne Street 3 project should be subject to a personal use discount since the modifications were going into her own home. The personal use discount was 25% of the total estimate or, as can be demonstrated from Exhibit Q, the personal use discount that Defendant Jenny Butler received amounted to $16,651.82.

79.    Over the course of depositions in support of an arbitration that preceded this lawsuit, Plaintiff David Glover discovered that Defendant Ryan Butler and/or Defendant Jenny Butler sold the residence at Lesesne Street 3 prior to using the home as her own personal residence. Plaintiffs are entitled to reimbursement of the personal use discount for the Lesesne Street 3 they provided to Defendant Jenny Butler since the home did not become her own personal residence.

80.    The Charleston Home+Design Winter 2018 edition is accessible from Shelter's website and has been included in Exhibit T.[9] This edition of Charleston Home+Design features the Lesesne Isle 3 project and shows an image of the kitchen for the project. While this article includes acknowledgments that the cabinetry was provided by Coastal Cabinet Company, the countertop fabricator & supplier was Palmetto Surfacing, flooring by RW Cauble & Co, Tile by

---

[8] sheltercustombuiltliving.com/2020/07/31/lesesne-street-3/ accessed January 4, 2023.
[9] sheltercustombuiltliving.com/charleston-home-design-winter-2018/ accessed December 26, 2022.

Buckhannon Brothers Tile, as well as others, this article in Charleston Home+Design does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover as a designer and installer of the cabinetry.

81.    The Charleston Home+Design Fall 2020 edition is accessible from Shelter's website and has been included in Exhibit U.[10] This edition of Charleston Home+Design features the Lesesne Isle 3 project and shows an image of the kitchen for the project. However, this article in Charleston Home+Design does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover as a designer and installer of the cabinetry.

82.    The Charleston Home+Design Blog included an article entitled "A Sit Down with SHELTER Custom Home Living" dated April 27, 2021, that includes information obtained from an interview with Defendant Ryan Butler. This article has been included in Exhibit V[11] and features the kitchen of the Lesesne Isle 3 project. However, this article in the Charleston Home+Design Blog does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover as a designer and installer of the cabinetry for the kitchen.

83.    "Bermuda Isle 1" is a project identified on the Shelter Projects webpage included in Exhibit I. Pursuant to the contract included in Exhibit W, upon information and belief, Shelter had engaged Plaintiffs to design, acquire materials, and perform the installation of the cabinetry for the kitchen and a bathroom of the Bermuda Isle 1 project. Paragraph 16 of this contract also includes a Promotional Use Clause.

84.    The technical drawings and three-dimensional renderings for the design developed by Plaintiffs for the Bermuda Street 1 project have been included in Exhibit X. The webpage

---

[10] sheltercustombuiltliving.com/charleston-home-design-fall-2020/ accessed December 26, 2022.
[11] charlestonhomeanddesign.com/a-sit-down-with-shelter-custom-built-living/ accessed December 26, 2022.

included in Exhibit Y includes a photograph that has been accessed through the link provided for "Bermuda Isle 1" on the Shelter Projects webpage and shows the kitchen for the Bermuda Street 1 project.[12] The kitchen, in this photograph is the same as that represented in the technical drawings and the three-dimensional renderings of Exhibit X that were designed and installed by Plaintiffs. However, as otherwise required by the Promotional Use Clause, nothing is included in the webpage that references "Design Gaps, Inc." or Plaintiff David Glover as the designer or the installer of the kitchen for the Bermuda Street 1 project.

85.    "Wando View Street 1" is a project identified on the Shelter Projects webpage included in Exhibit I. Pursuant to the contract included in Exhibit Z, Defendant Ryan Butler, and, upon information and belief, Shelter had engaged Plaintiffs to design, acquire materials, and perform the installation of the cabinetry for the kitchen, the master bathroom and another bathroom of the Wando View Street 1 project. Upon information and belief, paragraph 16 of this contract included a Promotional Use Clause as was typical with all of Plaintiffs' contracts.

86.    The technical drawings for the design developed by Plaintiffs for the Wando View Street 1 project have been included in Exhibit AA. The webpages included in Exhibit AB includes photographs that have been accessed through the link provided for "Wando View Street 1" on the Shelter Projects webpage and respectively show the kitchen and the master bathroom for the Wando View Street 1 project.[13] The kitchen, in this photograph is the same as that represented in the technical drawings of Exhibit AA that were designed and installed by Plaintiffs. However, as otherwise required by the Promotional Use Clause, nothing is included in the webpage that

---

[12] sheltercustombuiltliving.com/2016/09/23/bermuda-isle-1/ accessed January 4, 2023.
[13] sheltercustombuiltliving.com/2016/02/16/wando-view-street-1/ accessed January 4, 2023.

references "Design Gaps, Inc." or Plaintiff David Glover as the designer or installer of the kitchen, the master bathroom or other bathroom of the Wando View Street 1 project.

87.    The Charleston Home+Design Spring 2017 edition is accessible from Shelter's website and has been included in Exhibit AC.[14] This edition of Charleston Home+Design features the Wando View Street 1 project and shows images of the kitchen and the master bathroom for the project. While this article in Charleston Home+Design acknowledges, *inter alia*, that cabinets were provided by Downsview Kitchens and Bath, hardware was provided by Foxworth Decorative Hardware, countertop and shower bench was provided by Palmetto Surfacing, Hollis Erickson as the design, as well as other attributions, the article does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover as a designer and installer of the cabinetry.

88.    The Charleston Home+Design Fall 2019 edition is accessible from Shelter's website and has been included in Exhibit AD.[15] This edition of Charleston Home+Design shows an image of the kitchen for the Wando View Street 1 project. However, this article in Charleston Home+Design does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover as a designer and installer of the cabinetry.

89.    "Watroo Point 2" is a project identified on the Shelter Projects webpage included in Exhibit I. Pursuant to the contract included in Exhibit AE, upon information and belief, Shelter had engaged Plaintiffs to design, acquire materials, and perform the installation of the cabinetry for the kitchen and pantry, mud room, master bath, and other bathrooms for the Watroo Point 2 project. Upon information and belief, paragraph 16 of this contract included a Promotional Use Clause as was typical with all of Plaintiffs' contracts.

---

[14] sheltercustombuiltliving.com/charleston-home-design-spring-2017/ accessed December 26, 2022.
[15] sheltercustombuiltliving.com/charleston-home-design-fall-2019 accessed December 26, 2022.

90.    The technical drawings for the design developed by Plaintiffs for the Bermuda Street 1 project have been included in Exhibit AF. The webpage included in Exhibit AG includes a photograph that have been accessed through the link provided for "Watroo Point 2" on the Shelter Projects webpage and shows the kitchen for the Watroo Point 2 project.[16] The kitchen, in this photograph is the same as that represented in the technical drawings of Exhibit AF that were designed and installed by Plaintiffs. However, nothing is included in the webpage that references "Design Gaps, Inc." or Plaintiff David Glover.

91.    The Charleston Home+Design Winter 2017 edition is accessible from Shelter's website and has been included in Exhibit AH.[17] This edition of Charleston Home+Design shows an image of the kitchen for the Watroo Point 2 project. However, this article in Charleston Home+Design does not include any information that references "Design Gaps, Inc." or Plaintiff David Glover as a designer and installer of the cabinetry.

92.    "Dalton Street 1 & 2" is a project identified on the Shelter Projects webpage included in Exhibit I. Pursuant to the contract included in Exhibit AI, Defendant Brian Butler, and, upon information and belief, Shelter had engaged Plaintiffs to design, acquire materials, and perform the installation of the cabinetry for the kitchen in the pool house for the Dalton Street 1 & 2 project. Upon information and belief, paragraph 16 of this contract included a Promotional Use Clause that was typical with all of Plaintiffs' contracts.

93.    The technical drawings for the design developed by Plaintiffs for the Dalton Street 1 & 2 project have been included in Exhibit AJ. The webpage included in Exhibit AK includes a photograph that has been accessed through the link provided for "Dalton Street 1 & 2" on the

[16] sheltercustombuiltliving.com/2015/09/16/watroo-point-2/ accessed January 3, 2023.
[17] sheltercustombuiltliving.com/charleston-home-design-winter-2017/ accessed December 26, 2022.

Shelter Projects webpage and shows the kitchen in the pool house for the Dalton Street 1 & 2 project.[18] The kitchen, in this photograph is the same as that represented in the technical drawings of Exhibit AJ that were designed and installed by Plaintiffs. However, nothing is included in the webpage that references "Design Gaps, Inc." or Plaintiff David Glover as the designer or installer of cabinetry for the project.

94.     "Island Park Drive 1" is a project identified on the Shelter Projects webpage included in Exhibit I. Pursuant to the contract included in Exhibit AL, upon information and belief, Shelter had engaged Plaintiffs to design, acquire materials, and perform the installation of the cabinetry for the kitchen and pantry, butlery, laundry, and bathroom vanities including the master bathroom vanity and sink base unit for the Island Park Drive 1 project. Paragraph 16 of this contract includes a Promotional Use Clause that provides that "[a]ny promotional use by others depicting the cabinetry and design will reference Design Gaps, Inc. as the supplier and designer" for the cabinets being supplied pursuant to the agreement.

95.     The technical drawings for the design developed by Plaintiffs for the Island Park Drive project have been included in Exhibit AM. The webpage included in Exhibit AN includes photographs that have been accessed through the link provided for "Island Park Drive 1" on the Shelter Projects webpage and respectively shows the kitchen, the master bathroom vanities, and bathroom vanity for the Island Park Drive 1 project.[19] The kitchen and bathroom vanities, in these photographs are the same as that represented in the technical drawings of Exhibit AM that were designed and installed by Plaintiffs. However, nothing is included in the webpage that references

---

[18] sheltercustombuiltliving.com/2014/01/28/dalton-street-1/ accessed January 3, 2023.
[19] sheltercustombuiltliving.com/2013/06/30/creative-ideas// accessed January 3, 2023 and January 9, 2023.

"Design Gaps, Inc." or Plaintiff David Glover as the designer or installer of cabinetry or vanities for the project.

96.    As demonstrated above, in connection with the goods that Plaintiffs have developed, and the services Plaintiffs have provided, Shelter, Defendant Ryan Butler, and, upon information and belief, Defendant Jenny Butler have used in commerce words, terms, names, and designs, individually and in combination, that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Shelter, Defendant Ryan Butler, and Defendant Jenny Butler with Plaintiffs' Designs and design services.

97.    As further demonstrated above, in other instances, with respect to the goods that Plaintiffs have developed, and the services Plaintiffs have provided, Shelter, Defendant Ryan Butler, and, upon information and belief, Defendant Jenny Butler have chosen not to use in commerce the words, terms, names, and designs, individually and in combination, that if otherwise used would avoid confusion, or mistake, or deception as to the affiliation, connection, or association of Shelter, Defendant Ryan Butler, and Defendant Jenny Butler with Plaintiffs' Designs and design services.

98.    As demonstrated with the examples provide above, Shelter, Defendant Ryan Butler, and, upon information and belief, Defendant Jenny Butler have used in commerce the necessary words, terms, names, and designs, individually and in combination, to deceive the public with respect to the origin, sponsorship, or approval of the goods, services, or commercial activities developed by Plaintiff Glover.

99.    As further demonstrated with the examples provide above, in other instances, Shelter, Defendant Ryan Butler, and, upon information and belief, Defendant Jenny Butler have chosen not to use in commerce the necessary words, terms, names, and designs, individually and

25

in combination, that if otherwise used would avoid confusion, or mistake, or deception as to the affiliation, connection, or association of Shelter, Defendant Ryan Butler, and, upon information and belief, Defendant Jenny Butler with Plaintiff Glovers' designs and design services.

100.    These misrepresentations by Shelter, Defendant Ryan Butler, and, upon information and belief, Defendant Jenny Butler surrounding not only Plaintiffs' Designs but other revision and design services to conform the plan, either through derivative changes of the protected elements or selection of the non-protected elements to function with the protected elements, to meet the needs of a specific client, and other design activities that Plaintiff Glover routinely provides cannot be provided to the segment of the public that Shelter and Defendant Ryan Butler have deceived.

101.    Shelter, Defendant Ryan Butler, and, upon information and belief, Defendant Jenny Butler have sought to benefit themselves and their home building and home renovation businesses to capitalize on the goodwill associated Plaintiff Glover, to mislead current and potential customers with respect to the origin of such design, and to divert current and potential customers from doing business with Plaintiffs in favor of doing business with Shelter, Defendant Ryan Butler, and, upon information and belief, Defendant Jenny Butler. Shelters', Defendant Ryan Butler's, and Defendant Jenny Butler's conduct is a violation of the laws of the United States and of the State of South Carolina.

## FIRST CAUSE OF ACTION
(Copyright Infringement under the 17 U.S.C. § 101 *et seq.* by Design Gaps and Plaintiff David Glover against Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss)

102.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

103.    Plaintiffs' Designs are original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States.[20] Design Gaps, as an employer for hire, is the author of Plaintiffs' Designs and the Plaintiff David Glover as an employee of Design Gaps who developed Plaintiffs' designs are the current claimant in Distinctive Design's, Defendant Bryan Reiss' and Defendant Wendy Reiss' infringement of Plaintiffs' Designs.

104.    Plaintiffs have complied in all respects with the copyright laws of the United States and have secured the exclusive rights and privileges in and to Plaintiffs' Designs.

105.    Plaintiffs have published Plaintiffs' Designs through distribution of copies of the works by offer for sale, actual sale, or other means of transfer.[21] Commencing on the date of first publication, and consistently thereafter, Plaintiffs' Designs have been published by Plaintiffs in conformity with the copyright laws of the United States.

106.    Without Plaintiffs' prior knowledge or permission, Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss prepared or induced, caused, or materially contributed to the preparation of certain cabinetry and/or closets by copying Plaintiffs' Designs. Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss then used Plaintiffs' Designs or derivative works based upon Plaintiffs' Designs to prepare and construct such works through their normal channels of providing such products and services.

107.    In certain instances, Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss have directly copied Plaintiffs' Designs. In other instances, Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss infringing cabinetry and closet works bear substantial similarity to Plaintiffs' Designs.

---

[20] 17 U.S.C. § 101 *et seq.*
[21] *See* 17 U.S.C. § 101.

108.    Distinctive Design's, Defendant Bryan Reiss' and Defendant Wendy Reiss' actions violate Plaintiffs' exclusive rights in Plaintiffs' Designs and constitute an infringement of those copyrights under the copyright laws of the United States.

109.    Upon information and belief, Distinctive Design's, Defendant Bryan Reiss' and Defendant Wendy Reiss' copyright infringements of Plaintiffs' Designs were knowing, willful and intentional.

110.    Distinctive Design's, Defendant Bryan Reiss' and Defendant Wendy Reiss' actions have caused, and will cause, irreparable damage to Plaintiffs for which there exist no adequate remedy at law.

111.    During the pendency of this action and permanently thereafter, Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss should be enjoined and restrained from directly or indirectly infringing upon Plaintiffs' copyrights by using, copying, reproducing, displaying, distributing, marketing, offering for sale, advertising, preparing derivative works thereof, or otherwise infringing upon, directly or indirectly, Plaintiffs' Designs and all other of Plaintiffs' copyright materials.

112.    Plaintiffs are entitled to recover all damages suffered as a result of Distinctive Design's, Defendant Bryan Reiss' and Defendant Wendy Reiss' wrongful acts, including, but not limited to, profits obtained by Defendants as a result of their wrongful acts and the loss of profits sustained by Plaintiffs. In the alternative, Plaintiffs are entitled to recover statutory damages in an amount to be determined by the Court. Plaintiffs are also entitled to recover all reasonable attorney's fees, court costs and interest on said damages from the date of Defendants' infringements.

SECOND CAUSE OF ACTION
(Contributory Copyright Infringement under the 17 U.S.C. § 101 *et seq.* by Design Gaps and Plaintiff David Glover against Shelter, Defendant Ryan Butler, Defendant Jenny Butler and Defendant Highsmith Trust)

113.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

114.    Plaintiffs' Designs subject to copyright protection were directly infringed when Defendant Bryan Reiss used those designs at the Residence. By providing the technical drawings having Plaintiffs' Designs to Defendant Bryan Reiss, Defendant Jenny Butler materially contributed to the unauthorized and infringing use of Plaintiffs' Design by Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss.

115.    In approving of and allowing such actions to be taken by Defendant Jenny Butler, Defendant Ryan Butler and Shelter materially contribute and have materially contributed to the unauthorized and infringing use of Plaintiffs' Designs by Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss.

116.    Upon information and belief, in her capacity as Trustee of Defendant Highsmith Trust, Kacie Highsmith's directions to Defendant Jenny Butler to send the technical drawings having Plaintiffs' Designs to Defendant Bryan Reiss, materially contributed to the unauthorized and infringing use of Plaintiffs' Designs by Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss.

117.    Shelter's, Defendant Jenny Butler's and Defendant Ryan Butler's acts leading to the unauthorized and infringing use of Plaintiffs' Designs by Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

118.    In her capacity as Trustee of Defendant Highsmith Trust, Kacie Highsmith's acts leading to the unauthorized and infringing use of Plaintiffs' Designs by Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

119.    As a direct and proximate result of Shelter's, Defendant Jenny Butler's and Defendant Ryan Butler's acts leading to the unauthorized and infringing use of Plaintiffs' copyrights by Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss and the violation of Plaintiffs' exclusive rights under copyright, Plaintiffs are entitled to damages and Shelter's, Defendant Jenny Butler's and Defendant Ryan Butler's profits pursuant to 17 U.S.C. § 504(b) for each infringement.

120.    As a direct and proximate result of Kacie Highsmith's acts in her capacity as Trustee of Defendant Highsmith Trust leading to the unauthorized and infringing use of Plaintiffs' copyrights by Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss and the violation of Plaintiffs' exclusive rights under copyright, Plaintiffs are entitled to damages and Distinctive Design's, Defendant Bryan Reiss' and Defendant Wendy Reiss' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

121.    Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

122.    Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

123.    Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or

measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to injunctive relief prohibiting further contributory infringements of Plaintiffs' copyrights.

### THIRD CAUSE OF ACTION
(Vicarious Copyright Infringement under the 17 U.S.C. § 101 *et seq.* by Design Gaps and Plaintiff David Glover against Shelter, Defendant Ryan Butler, and Defendant Jenny Butler)

124.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

125.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler had, and continues to have, the right and ability to control the distribution of technical drawings bearing designs subject to copyright protection by, without limitation, sending the technical drawings to others who can directly engage in an infringing activity through the use of such technical drawings.

126.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have failed to exercise such supervision and/or control over technical drawings having copyright protection. As a direct and proximate result of such failures, Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have repeatedly allowed others to directly infringe and will continue to repeatedly infringe Plaintiffs' Designs having Copyright protection.

127.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler derived (and continues to derive) substantial and direct financial benefit from its customers by providing to others technical drawings subject to copyright protection to allow them to perform work for their customers.

128.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have not acted reasonably or in good faith notwithstanding having knowledge of who developed such technical drawings and notice of the developer's copyright protections in these designs.

31

129.    Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's acts leading to the unauthorized and infringing use of Plaintiffs' Designs by Distinctive Design, Defendant Bryan Reiss and Defendant Wendy Reiss have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

130.    As a direct and proximate result of Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's vicarious infringements of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to damages and Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's profits pursuant to 17 U.S.C. § 504(b) for each infringement.

131.    Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

132.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

133.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to injunctive relief prohibiting further contributory infringements of Plaintiffs' Copyrighted Designs.

<u>FOURTH CAUSE OF ACTION</u>
(Lanham Act False Advertising Violations by Plaintiffs against Shelter, Defendant Ryan Butler, and Defendant Jenny Butler)

134.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

135.    Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's actions constitute a violation of the Lanham Act including, but not limited to, claims for false advertising.[22]

136.    Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler used, reproduced, displayed, marketed, offered for sale, advertised and sold Plaintiffs' Designs by showing Shelter's ability to provide the Ralston Creek 2 cabinetry and master bathroom closet;[23] the Bayley Street 1 kitchen, butlery, and bar;[24] the Lesesne Street 3 kitchen;[25] the Bermuda Isle 1 kitchen and bathroom;[26] the Wando View Street 1 kitchen, master bathroom, and other bathroom;[27] Watroo Point 2 kitchen and pantry, mud room, master bathroom, and other bathroom;[28] Dalton Street 1 & 2 pool house kitchen;[29] and the Island Park Drive 1 kitchen and pantry, butlery, laundry, bathroom vanities, and master bathroom vanity and sink base unit.[30]

137.    Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used the Plaintiffs' designs for the Ralston Creek 2 cabinetry and master bathroom closet, which have directly been copied from and/or bear substantial similarity to Plaintiffs' designs for the Ralston Creek 2 cabinetry and master bathroom closet, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Ralston Creek 2 cabinetry and master bathroom closet, or made false or misleading descriptions or representations of fact about the Ralston Creek 2 cabinetry and master bathroom closet, which are likely to cause confusion or mistake or to deceive others with respect to Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of

---

[22] 15 U.S.C. § 1125.
[23] *See, e.g.,* Exhibit H.
[24] *See, e.g.,* Exhibits L, N, O and P.
[25] *See, e.g.,* Exhibits S, T, U and V.
[26] *See, e.g.,* Exhibit Y.
[27] *See, e.g.,* Exhibits AB, AC and AD.
[28] *See, e.g.,* Exhibits AG and AH.
[29] *See, e.g.,* Exhibit AK.
[30] *See, e.g.,* Exhibit AN.

Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's use of the design for the Ralston Creek 2 cabinetry and master bathroom closet.

138.     Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used the Plaintiffs' designs for the Bayley Street 1 kitchen, butlery, and bar, which have directly been copied from and/or bear substantial similarity to Plaintiffs' designs for the Barley Street 1 kitchen, butlery, and bar, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Bayley Street 1 kitchen, butlery, and bar, or made false or misleading descriptions or representations of fact about the Bayley Street 1 kitchen, butlery, and bar, which are likely to cause confusion or mistake or to deceive others with respect to Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's use of the design for the Bayley Street 1 kitchen, butlery, and bar.

139.     Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used the Plaintiffs' designs for the Lesesne Street 3 kitchen, which have directly been copied from and/or bear substantial similarity to Plaintiffs' designs for the Lesesne Street 3 kitchen, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Lesesne Street 3 kitchen, or made false or misleading descriptions or representations of fact about the Lesesne Street 3 kitchen, which are likely to cause confusion or mistake or to deceive others with respect to Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's use of the design for the Lesesne Street 3 kitchen.

140.     Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used the Plaintiffs' designs for the Bermuda Isle 1 kitchen and bathroom, which have directly been copied

34

from and/or bear substantial similarity to Plaintiffs' designs for the Bermuda Isle 1 kitchen and bathroom, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Bermuda Isle 1 kitchen and bathroom, or made false or misleading descriptions or representations of fact about the Bermuda Isle 1 kitchen and bathroom, which are likely to cause confusion or mistake or to deceive others with respect to Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's use of the design for the Bermuda Isle 1 kitchen and bathroom.

141.    Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used the Plaintiffs' designs for the Wando View Street 1 kitchen, master bathroom, and other bathroom, which have directly been copied from and/or bear substantial similarity to Plaintiffs' designs for the Wando View Street 1 kitchen, master bathroom, and other bathroom, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Wando View Street 1 kitchen, master bathroom, and other bathroom, or made false or misleading descriptions or representations of fact about the Wando View Street 1 kitchen, master bathroom, and other bathroom, which are likely to cause confusion or mistake or to deceive others with respect to Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's use of the design for the Wando View Street 1 kitchen, master bathroom, and other bathroom.

142.    Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used the Plaintiffs' designs for the Watroo Point 2 kitchen and pantry, mud room, master bathroom, and other bathroom, which have directly been copied from and/or bear substantial similarity to

Plaintiffs' designs for the Watroo Point 2 kitchen and pantry, mud room, master bathroom, and other bathroom, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Watroo Point 2 kitchen and pantry, mud room, master bathroom, and other bathroom, or made false or misleading descriptions or representations of fact about the Watroo Point 2 kitchen and pantry, mud room, master bathroom, and other bathroom, which are likely to cause confusion or mistake or to deceive others with respect to Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's use of the design for the Watroo Point 2 kitchen and pantry, mud room, master bathroom, and other bathroom.

143.    Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used the Plaintiffs' designs for the Dalton Street 1 & 2 pool house kitchen, which have directly been copied from and/or bear substantial similarity to Plaintiffs' designs for the Dalton Street 1 & 2 pool house kitchen, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Dalton Street 1 & 2 pool house kitchen, or made false or misleading descriptions or representations of fact about the Dalton Street 1 & 2 pool house kitchen, which are likely to cause confusion or mistake or to deceive others with respect to Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's use of the design for the Dalton Street 1 & 2 pool house kitchen.

144.    Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used the Plaintiffs' designs for the Island Park Drive 1 kitchen and pantry, butlery, laundry, and bathroom vanities including the master bathroom vanity and sink base, which have directly been copied from

and/or bear substantial similarity to Plaintiffs' designs for the Island Park Drive 1 kitchen and pantry, butlery, laundry, and bathroom vanities including the master bathroom vanity and sink base, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Island Park Drive 1 kitchen and pantry, butlery, laundry, and bathroom vanities including the master bathroom vanity and sink base, or made false or misleading descriptions or representations of fact about the Island Park Drive 1 kitchen and pantry, butlery, laundry, and bathroom vanities including the master bathroom vanity and sink base, which are likely to cause confusion or mistake or to deceive others with respect to Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Shelter's, Defendant Ryan Butler's and Defendant Jenny Butler's use of the design for the Island Park Drive 1 kitchen and pantry, butlery, laundry, and bathroom vanities including the master bathroom vanity and sink base.

145.    In connection with the goods that Plaintiffs have developed, and the services Plaintiffs have provided, Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler have used in commerce words, terms, names, and designs, individually and in combination, that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Shelter, Defendant Ryan Butler, and Defendant Jenny Butler with Plaintiffs' design and installation services.

146.    Upon information and belief, Shelter's, Defendant Ryan Butler's, and/or Defendant Jenny Butler's false and misleading information actually deceived or tended to deceive a substantial portion of the intended audience into believing, among other things, that Shelter, Defendant Ryan Butler, and Defendant Jenny Butler designed certain cabinetry and other plans that Plaintiffs otherwise designed.

147.    Upon information and belief, Shelter's, Defendant Ryan Butler's, and/or Defendant Jenny Butler's false and misleading information are material in that consumers and potential consumers for home construction or renovation goods and services are misled into choosing Shelter, Defendant Ryan Butler, and Defendant Jenny Butler to provide such goods and services when such designs were otherwise provided by Plaintiffs.

148.    Upon information and belief, Shelter's, Defendant Ryan Butler's, and/or Defendant Jenny Butler's false and misleading advertising have injured Design Gaps' business, Plaintiffs' business reputations and goodwill, and Plaintiff David Glover's reputation for creativity in design, in an amount to be determined at trial.

149.    Upon information and belief, Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have deprived profit and have been unjustly enriched as a direct and proximate result of their actions against Plaintiffs.

150.    Shelter's, Defendant Ryan Butler's, and/or Defendant Jenny Butler's actions in violation of the Lanham Act have caused, and will continue to cause, irreparable damage to Plaintiffs for which there exists no adequate remedy at law.

151.    During the pendency of this action and permanently thereafter, Shelter, Defendant Ryan Butler, and Defendant Jenny Butler should be enjoined and restrained from directly or indirectly using any of Plaintiffs' Designs in any manner that is prohibited by the copyright law of the United States or the Lanham Act.

152.    Plaintiffs are entitled to all legal and equitable relief provided by the applicable law, including, but not limited to, 15 U.S.C. § 1117. That relief includes but is not limited to injunctive relief, monetary damages in an amount up to three times the actual damages sustained by Plaintiffs as a result of Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's actions and as

determined by this Court as guided by the principles of equity, all profits obtained by Shelter, Defendant Ryan Butler, and Defendant Jenny Butler as a result of their actions, the costs of this action, and reasonable attorney's fees incurred by Plaintiffs in this case.

## FIFTH CAUSE OF ACTION
(Lanham Act False Designation of Origin Violations by Plaintiff David Glover in his individual capacity and capacity as Officer of Design Gaps against Shelter, Defendant Ryan Butler, and Defendant Jenny Butler)

153.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

154.    Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's actions as alleged herein are unlawful and in violation of Section 43(a) of the Lanham Act.[31]

155.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have repeatedly and falsely claimed in commercial advertising or promotional materials to be the designer of numerous works that were, in fact, designed by Plaintiff David Glover, at least including the Ralston Creek 2 cabinetry and master bathroom closet; the Bayley Street 1 kitchen, butlery, and bar; the Lesesne Street 3 kitchen; the Bermuda Isle 1 kitchen and bathroom; the Wando View Street 1 kitchen, master bathroom, and other bathroom; the Watroo Point 2 kitchen and pantry, mud room, master bathroom, and other bathrooms; the Dalton Street 1 & 2 pool house kitchen; and the Island Park Drive 1 kitchen and pantry, butlery, laundry, and bathroom vanities including the master bathroom vanity and sink base.

156.    In some cases, Shelter, Defendant Ryan Butler, and Defendant Jenny Butler deceptively adopted different names for the designs, but the designs, nonetheless, were the same as or substantially similar Plaintiff David Glover's designs.

---

[31] 15 U.S.C. § 1125(a).

157.    Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's false designation of origin is likely to deceive and cause confusion in the marketplace, including confusion among consumers.

158.    As a direct and proximate portrayal of themselves as the designers of certain home plans designed by Plaintiff David Glover, Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's deceitful actions are continuing and will continue to serve as a threat to Plaintiff David Glover as a designer of cabinetry for homes as well as to the public. Unless Shelter, Defendant Ryan Butler, and Defendant Jenny Butler are restrained and enjoined from engaging in the false designations of origins described above, Plaintiff David Glover will likely lose future projects and profits in an amount not yet determined and will continue to suffer irreparable injury to his business reputation and goodwill as a designer. Plaintiff David Glover's remedy at law is not adequate to compensate him for such harm and damage.

159.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler acted and continue to act intentionally, willfully, and with full knowledge of Plaintiff David Glover's rights in his designs and installation services. This case is exceptional within the meaning of 15 U.S.C. § 1117(a).

## SIXTH CAUSE OF ACTION
(Breach of Contract by Plaintiffs Against Shelter, Defendant Ryan Butler, and Defendant Jenny Butler)

160.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

161.    On or about multiple occasion from 2016 to 2020 sometime, Design Gaps and Shelter through Defendant Ryan Butler or Defendant Jenny Butler entered agreements whereby

Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler would be allowed to use Plaintiffs' Designs for specified projects in these agreements.

162.    Each of the agreements included a Promotional Use Clause that provided "[a]ny promotional use by others depicting the cabinetry and design will reference Design Gaps, Inc. as the supplier and designer of the said area."

163.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have breached the agreements by copying Plaintiffs' Designs without obtaining Plaintiffs' permission and by advertising and marketing Plaintiffs' Designs on their websites and other associated avenues of advertising and marketing despite the fact that Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have failed to make payments to Plaintiffs for Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's continued use of Plaintiffs' Designs.

164.    Additionally, Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have breached the agreement without providing the necessary attribution to Design Gaps as mandated by the Promotional Use Clause.

165.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have breached the agreements by advertising Plaintiffs' Designs without compensating Plaintiffs and by failing to provide the requisite attribution to Design Gaps in accordance with the agreements. Plaintiffs are unable to calculate exact damages proximately caused by Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's breaches because information regarding the extent of Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's marketing and use of Plaintiffs' Designs is within Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's sole possession and will be subject to discovery through the course of this lawsuit.

SEVENTH CAUSE OF ACTION
(Breach of Contract by Plaintiffs Against Defendant Ryan Butler and Defendant Jenny Butler)

166.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

167.    On or about multiple occasion from 2016 to 2020 sometime, Design Gaps and Shelter through Defendant Ryan Butler or Defendant Jenny Butler entered agreements whereby Shelter, Defendant Ryan Butler, and/or Defendant Jenny Butler would be allowed to use Plaintiffs' Designs for specified projects in these agreements.

168.    Each of the agreements included a Promotional Use Clause that provided "[a]ny promotional use by others depicting the cabinetry and design will reference Design Gaps, Inc. as the supplier and designer of the said area."

169.    Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have breached the agreements by copying Plaintiffs' Designs without obtaining Plaintiffs' permission and by advertising and marketing Plaintiffs' Designs on their websites and other associated avenues of advertising and marketing despite the fact that Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have failed to make payments to Plaintiffs for Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's continued use of Plaintiffs' Designs.

170.    Additionally, Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have breached the agreement without providing the necessary attribution to Design Gaps as mandated by the Promotional Use Clause.

Shelter, Defendant Ryan Butler, and Defendant Jenny Butler have breached the agreements by advertising Plaintiffs' Designs without compensating Plaintiffs and by failing to provide the requisite attribution to Design Gaps in accordance with the agreements. Plaintiffs are unable to calculate exact damages proximately caused by Shelter's, Defendant Ryan Butler's, and Defendant

Jenny Butler's breaches because information regarding the extent of Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's marketing and use of Plaintiffs' Designs is within Shelter's, Defendant Ryan Butler's, and Defendant Jenny Butler's sole possession and will be subject to discovery through the course of this lawsuit.

EIGHTH CAUSE OF ACTION

(Tortious Interference with a Contract by Plaintiffs against Distinctive Design, Defendant Bryan Reiss, and Defendant Wendy Reiss)

171.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

172.    Plaintiffs had a reasonable expectation that they would maintain the existing Contracts with Shelter and the Highsmiths and/or enter into other contracts and/or business relationships, and derive revenue from a relationship with Shelter and the Highsmiths who signed said Contracts and communicated their interest in establishing other contractual relationships with Plaintiffs.

173.    The relationship that developed between Plaintiffs and Shelter and the Highsmiths is evidenced by written and oral communications between the parties, and the Contracts that existed between the parties to perform design and the purchase and installation of materials to provide cabinetry and master closets for the Residence.

174.    Upon information and belief, Defendant Bryan Reiss, Defendant Wendy Reiss, and Distinctive Design knew of these business relationships and prospective additional work that Plaintiffs could have received, and Defendant Bryan Reiss, Defendant Wendy Reiss, and Distinctive Design intentionally, unjustifiably, and with improper purpose interfered with Plaintiffs' contractual and business relations.

175.    As further discussed herein, the interference caused Shelter and the Highsmiths to breach and/or terminate the Contracts, prospective additional design, purchase, and installation services, other business relationships, and/or expectancies with Plaintiffs.

176.    Such breaches of the Contracts were procured, at least in part, by Distinctive Design, Defendant Bryan Reiss, and Defendant Wendy Reiss without privilege and with full knowledge of Plaintiffs' exclusive rights to Plaintiffs' Designs.

177.    As a direct and proximate result of Defendant Bryan Reiss', Defendant Wendy Reis's, and Distinctive Design's interferences, Plaintiffs have been injured, will continue to be injured, and will be directly deprived of any future revenues deriving from the opportunity, which instead accrued and continues to accrue to Distinctive Design, Defendant Bryan Reiss, and Defendant Wendy Reiss.

NINTH CAUSE OF ACTION
(Tortious Interference with a Contract by Plaintiffs against Defendant Ryan Butler, Defendant Jenny Butler, and Defendant Highsmith Trust)

178.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

179.    Plaintiffs had a reasonable expectation that they would maintain the existing Contracts with the Highsmiths and/or enter into other contracts and/or business relationships, and derive revenue from a relationship the Highsmiths who signed said Contracts and communicated their interest in establishing other contractual relationships with Plaintiffs.

180.    The relationship that developed between Plaintiffs and the Highsmiths is evidenced by written and oral communications between the parties, and the Contracts that existed between the parties to perform design and the purchase and installation of materials to provide cabinetry and master closets for the Residence.

44

181.    Defendant Ryan Butler, Defendant Jenny Butler, and Defendant Highsmith Trust knew of these business relationships and prospective additional work that Plaintiffs could have received, and Defendant Ryan Butler, Defendant Jenny Butler, and Defendant Highsmith Trust intentionally, unjustifiably, and with improper purpose interfered with Plaintiffs' contractual and business relations.

182.    As further discussed herein, the interference caused the Highsmiths to breach and/or terminate the Contracts, prospective additional design, purchase, and installation services, other business relationships, and/or expectancies with Plaintiffs.

183.    Such breaches were procured, at least in part, by Defendant Ryan Butler, Defendant Jenny Butler, and Defendant Highsmith Trust without privilege and with full knowledge of Plaintiffs' exclusive rights to Plaintiffs' Designs.

184.    As a direct and proximate result of Defendant Ryan Butler's, Defendant Jenny Butler's, and Defendant Highsmith Trust's interferences, Plaintiffs have been injured, will continue to be injured, and will be directly deprived of any future revenues deriving from the opportunity, which instead accrued and continues to accrue to Defendant Ryan Butler, Defendant Jenny Butler, and Defendant Highsmith Trust.

TENTH CAUSE OF ACTION
(Defamation *Per Se* by Plaintiff David Glover in his individual capacity and capacity as Officer of Design Gaps against Defendant Highsmith Trust)

185.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

186.    The nature of the accusations by Kacie Highsmith as an agent and representative of Defendant Highsmith Trust that imply Plaintiff David Glover "has taken our money and not

provided the product and service he promised" and the like constitute statements that are defamatory *per se*.

187.     These defamatory statements made by an agent and representative of Defendant Highsmith Trust are false.

188.     These assertions by the agent and representative of Defendant Highsmith Trust were made with actual malice-*i.e.*, with knowledge that they were false or in reckless disregard of the truth.

189.     These assertions by the agent and representative of Highsmith Trust were made under common law malice in that they were malicious acts in gross and reckless disregard of the consequences and attempts by such agent and representative of Defendant Highsmith Trust to inflict harm on Plaintiff David Glover.

190.     These assertions by the agent and representative of Defendant Highsmith Trust were made with negligence and without due regard for the interest of Plaintiff David Glover, and with a reckless disregard for their consequences to Plaintiff David Glover.

191.     Each of the defamatory statements by the agent and representative of Defendant Highsmith Trust were made over the course and scope of their agency and/or representation of Defendant Highsmith Trust.

192.     Each of the defamatory statements by the agent and representative of Defendant Highsmith Trust were made acting on either the express or implied instructions of Defendant Highsmith Trust.

193.     As a direct and proximate result of these defamatory statements by the agent and representative of Defendant Highsmith Trust, Plaintiff David Glover has suffered actual damages including loss of reputation, humiliation, embarrassment, emotional anguish and distress.

194.    As a direct and proximate result of these defamatory statements by the agent and representative of Defendant Highsmith Trust and the republication of these statements to others, Plaintiff David Glover has suffered special damages including a loss of present and future income in an amount to be determined at trial.

195.    In making these statements in question, the agent and representative of Defendant Highsmith Trust were acting within the actual or apparent scope of their authority for Defendant Highsmith Trust.

ELEVENTH CAUSE OF ACTION
(Defamation *Per Quad* by Plaintiff David Glover in his individual capacity and capacity as Officer of Design Gaps against Defendant Highsmith Trust)

196.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

197.    An agents and/or representative of Defendant Highsmith Trust has made false statements lacking a reasonable basis for such statements to the supplier of goods for Plaintiff David Glover.

198.    Defendant Highsmith Trust stands behind and maintains the authenticity of these false statements made by its agent and/or representative to the supplier of goods for Plaintiff David Glover.

199.    The agent and/or representative of Defendant Highsmith Trust made the false and defamatory statements with actual malice toward Plaintiff David Glover with the specific intent to damage and harm Plaintiff David Glover.

200.    The falsity of the statements made by the agent and/or representative of Defendant Highsmith Trust injured the reputation of Plaintiff David Glover individually and professionally,

47

in his practice as designer, supplier, and installer of goods and the provision of services for new home construction or homes under renovation.

201.     Plaintiff David Glover has suffered substantial damages in an amount to be determined at trial as a result of these statements made by the agent and/or representative of Defendant Highsmith Trust acting in the actual or apparent scope of their authority on behalf of Defendant Highsmith Trust.

<u>TWELTH CAUSE OF ACTION</u>
(Unfair Competition in Violation of the South Carolina Unfair Trade Practices Act by Plaintiffs against Defendants)

202.     Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

203.     Defendants' conduct, as alleged herein, constitutes intentional and willful unfair methods of competition and unfair or deceptive acts or practices in commerce in violation of South Carolina Code Ann. § 39-5-10 *et seq*.

204.     Defendants' conduct, as alleged herein, constitutes intentional and willful unfair methods of competition that is likely to have an adverse impact upon the public

205.     Defendants' intentional and willful unfair methods of competition and unfair or deceptive acts or practices in commerce are capable of being repeated and are, in fact, being repeated and have caused Plaintiffs to suffer damages entitling it to relief permitted by South Carolina Ann. § 39-5-140.

206.     As a direct and proximate result of Defendants' unfair competitive conduct in contravention of South Carolina law, Plaintiffs have been injured and suffers and will continue to suffer monetary loss, including loss of sales, profits, and damages in an amount to be determined.

207.    Plaintiffs are entitled to damages, treble damages and its costs and attorneys' fees incurred in this lawsuit.

### THIRTEENTH CAUSE OF ACTION
(Unjust Enrichment by Plaintiffs against Defendants)

208.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

209.    Plaintiffs have developed substantial goodwill in Plaintiffs' visual designs because of Plaintiffs' extensive and prolonged use and significant advertising of Plaintiffs' visual designs and custom cabinetry.

210.    Consumers and the public have come to associate Plaintiffs' visual design exclusively with Plaintiffs.

211.    Defendants' use of designs that have directly been copied from and/or are confusingly similar to Plaintiffs' visual designs has resulted in unjust enrichment of Defendants, who have benefited and will continue to benefit from Plaintiffs investment, goodwill and public recognition in its visual designs.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment in its favor on each and every claim for relief set forth herein and award Plaintiffs relief for the following:

a)    Defendants pay to Plaintiffs all damages Plaintiffs have suffered by reason of Defendants' acts complained of herein;

b)    Defendants pay to Plaintiffs any losses Plaintiffs have incurred from Defendants breaches of contract complained of herein including breaches of the Promotional Use Clause in the series of agreements executed between Plaintiffs and Shelter, Defendant Ryan Bulter, and

Defendant Jenny Butler, and breach of the agreement between Design Gaps and Plaintiff David Glover and Defendant Jenny Butler that included a personal use discount for a residence that Defendant Ryan Butler and Defendant Jenny Butler never resided in;

c)    Defendants pay to Plaintiffs exemplary and treble damages as allowed by the statutes and laws referenced herein;

d)    Defendants pay to Plaintiffs profits obtained by Defendants associated with Defendants' acts described herein;

e)    Defendants pay to Plaintiffs any statutory damages based upon Defendants' copyright infringement;

f)    Defendants pay to Plaintiffs pre-judgment interest on any damages awarded to Plaintiffs;

g)    Defendants be ordered and required to pay punitive damages for their acts described herein;

h)    Defendants be ordered and required to pay all costs associated with this action including the attorney's fees and expenses incurred by Plaintiffs;

i)    An Order that prevents any Defendants' designs that have directly been copied from and/or are substantially similar to Plaintiffs' visual designs from being copied;

j)    Defendants be permanently enjoined from advertising, marketing, offering for sale or selling any homes that use Plaintiffs' visual designs and any other design substantially similar to Plaintiffs' visual designs;

k)    Defendants be permanently enjoined from further marketing and selling home products that encompass Plaintiffs' visual designs or designs that are substantially similar to Plaintiffs' visual designs;

l)    The Defendants be permanently enjoined from using Plaintiffs' visual designs and any design substantially similar to Plaintiffs' visual designs; and

m)    Plaintiffs be awarded such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable in this lawsuit.

This 13th day of January, 2023,

Respectfully Submitted,

Design Gaps, Inc., David Glover and Eva Glover
By counsel

By:  s/Todd M. Hess
    Todd M. Hess (Federal ID No. 12925)
    Hess Law, PLLC
    5922 Weddington Rd, Ste A5-195
    Wesley Chapel, NC 28104
    Telephone: (980) 213-6929
    Fax: (980) 300-0089
    toddhess@biziplaw.com
    *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 13, 2023, Plaintiffs caused to be served Complaint on counsel of record for Shelter, LLC in another related matter via email and United States mail, with due and proper postage affixed thereto, and addressed as follows:

R. Andrew Walden
Womble Bond Dickison (US) LLP
5 Exchange Street
Charleston, SC  29401
andrew.walden@wbd-us.com

This the 13th day of January, 2023

HESS LAW, PLLC

By: /s/ Todd M. Hess

Todd M. Hess (Federal ID No. 12925)
Hess Law, PLLC
5922 Weddington Rd, Ste A5-195
Wesley Chapel, NC 28104
Telephone: (980) 213-6929
Fax: (980) 300-0089
toddhess@biziplaw.com
*Attorney for Plaintiffs*