# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Design Gaps, Inc.; David Glover, *individually and Officer of Design Gaps, Inc.*; and Eva Glover, *Officer of Design Gaps Inc.*<br><br>      Plaintiffs,<br>   v.<br><br>Distinctive Design & Construction LLC, *d/b/a* Distinctive Design LLC; Bryan Reiss, *individually and President of Distinctive Design LLC*; Wendy Reiss, *individually and Vice President of Distinctive Design LLC*; Shelter, LLC, *d/b/a* as Shelter Custom-Built Living; Ryan Butler, *individually and Owner of Shelter Custom-Built Living*; Jenny Butler, *individually and Design Coordinator Shelter Custom-Built Living*; and Kacie M. Highsmith, *individually and as Trustee of the Kacie M. Highsmith Trust*<br><br>      Defendants. | Civil No. 2:23-cv-00197-RMG<br><br><br>**ORDER AND OPINION** |

   This matter is before the Court on Defendants' motions to dismiss. (Dkt. Nos. 22, 23). Plaintiffs opposed both motions. (Dkt. Nos. 24, 25). Defendants replied. (Dkt. Nos. 27, 28). For the reasons set forth below, the Court grants in part Defendants' motions to dismiss. All claims against Defendants Distinctive Design, Bryan Reiss, Wendy Reiss, and Kacie M. Highsmith, individually and as trustee of the Kacie M. Highsmith Trust, are dismissed. Only Plaintiffs' Lanham Act and breach of contract claims against Defendants Shelter, Ryan Butler, and Jenny Butler remain.

I.  **BACKGROUND**

This dispute arises from a home renovation.[1] In June 2020, Jason Highsmith and Kacie Highsmith (the "Highsmiths") hired Shelter Custom-Built Living ("Shelter"), a company that builds and renovates homes. (Dkt. No. 17 at ¶ 19). Shelter was hired to renovate the Highsmiths' home, and, in turn, hired Design Gaps to furnish cabinets for the Highsmiths' home (the "Residence"). (*Id.* at ¶ 20). Shelter advised Design Gaps that "8 weeks is our completion time." (*Id.* at ¶ 21).

Central to the disputes in this case, the Highsmiths, Shelter, and Design Gaps entered into two contracts. In August 2020, Kacie Highsmith and Shelter contracted with Design Gaps to furnish cabinets for the Residence. (*Id.* at ¶ 17). In September 2020, Jason Highsmith contracted with Design Gaps separately to furnish his-and-her closets for the Residence. (*Id.*). In May 2021, the Highsmiths terminated the contracts when Design Gaps had still failed to complete the job. (*Id.* at ¶ 50).

The Highsmiths and Shelter hired Distinctive Design, LLC ("Distinctive Design") to finish the cabinets and closets that Design Gaps was initially hired to furnish. (*Id.* at ¶¶ 51, 56). Relevant here, Design Gaps alleges that Shelter emailed Distinctive Design "the technical drawings for [Design Gaps'] Designs intending that [Distinctive Design] would use these in the work that [it] was to do for the Highsmiths." (*Id.* at ¶ 56). Design Gaps alleges that these technical drawings are "original works of authorship and constitute copyrightable subject matter," (*Id.* at ¶ 53), and

---

[1] Unless otherwise stated, the facts are drawn from Plaintiffs' amended complaint (Dkt. No. 17) and exhibits attached to the amended complaint.

"[t]he use of [Design Gaps'] Designs at the Residence constituted direct infringement of [Design Gaps'] works subject to copyright protection." (*Id.* at ¶ 59).

Pursuant to a mandatory arbitration provision included in Design Gaps' standard contract, the Highsmiths and Shelter filed a demand for arbitration asserting breach of contract, promissory estoppel, fraud, and piercing the corporate veil. (Dkt. No. 17-41 at 1-2). Design Gaps counterclaimed for negligence, breach of contract, fraudulent misrepresentation, failure to mitigate damages, tortious interference, civil conspiracy, conversion, unfair and deceptive trade practices, quasi-contract, and violation of the copyright act. (*Id.* at 2). The Arbitrator conducted a merits hearing on May 26, 27 and June 2, 2022. (*Id.*). The Arbitrator issued an award against Design Gaps for $152,884.00, the costs of the arbitration of $17,411.83, and the reasonable attorney's fees of $126,113.34 for a total award in favor of the Highsmiths and Shelter against Design Gaps for $296,409.17. (*Id.* at 9). The Arbitrator found that Design Gaps was entitled to "take nothing under [its] counterclaims." (*Id.* at 6).

After losing in Arbitration, Design Gaps moved to vacate the arbitration award, arguing that the Arbitrator was evidently partial, manifestly disregarded the law, and imperfectly executed his duties. This Court rejected each of those arguments and confirmed the arbitration award in *Design Gaps, Inc. v. Shelter, LLC*, No. 2:22-cv-4698-RMG, Dkt. No. 14 (D.S.C. May, 19, 2023).[2]

---

[2] The Court takes judicial notice of the records in the case confirming the arbitration award. *See Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice. . . is in noticing the content of court records.'") (citations omitted). "Facts subject to judicial notice may be construed by a court on a motion to dismiss." *Briggs v. Newberry County Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992).

In this present lawsuit, Plaintiffs Design Gaps, David Glover (officer of Design Gaps), and Eva Glover (officer of Design Gaps) sue all the parties associated with the home renovation: Defendants Distinctive Design, Bryan Reiss (president of Distinctive Design), Wendy Reiss (vice president of Distinctive Design); Defendants Shelter, Ryan Butler (owner of Shelter); Jenny Butler (design coordinator for Shelter); and Defendant Kacie M. Highsmith (trustee of the Kacie M. Highsmith Trust, which holds the title to the Residence). (Dkt. No. 17).

Plaintiffs assert 16 causes of action against various combinations of the Defendants in this case. The claims break down as follows:

*Claims Against All Defendants*

Plaintiffs assert two claims against all Defendants: violation of the South Carolina Unfair Trade Practices Act ("SCUPTA") (claim 14) and unjust enrichment (claim 16). As the Court explains below, both claims are dismissed.

*Claims Against Defendant Kacie M. Highsmith, individually and as Trustee of Highsmith Trust*

Plaintiffs assert two claims against Defendant Kacie M. Highsmith, individually and in her capacity as Trustee of the Highsmith Trust: defamation per se (claim 12) and defamation per quad (claim 13). As the Court explains below, both claims are dismissed.

*Claims Against Defendants Shelter, Ryan Butler, Jenny Butler, and Highsmith Trust*

Plaintiffs assert one cause of action against Defendants Shelter, Ryan Butler, Jenny Butler, and Highsmith Trust: contributory copyright infringement (claim 2). As the Court explains below, this claim is dismissed.

*Claims Against Defendants Shelter, Ryan Butler, and Jenny Butler*

Plaintiffs assert five causes of action against Defendants Shelter, Ryan Butler, and Jenny Butler: vicarious copyright infringement (claim 3); Lanham Act False Advertising (claim 4); Lanham Act False Designation of Origin (claim 5); and Lanham Act Unfair Competition (claim 7); and breach of contract (claim 8). As the Court explains below, Plaintiffs' claim for vicarious copyright infringement is dismissed, and the Lanham Act claims and the breach of contract claim survive the motion to dismiss.

*Claims Against Defendants Ryan Butler and Jenny Butler*

Plaintiffs assert one claim against Defendants Ryan Butler and Jenny Butler: breach of contract (claim 9). As the Court explains below, this claim survives the motion to dismiss.

*Claims Against Defendants Ryan Butler, Jenny Butler, and Highsmith Trust*

Plaintiffs assert one cause of action against Defendants Ryan Butler, Jenny Butler, and Highsmith Trust: tortious interference with a contract (claim 11). As the Court explains below, this claim is dismissed.

Defendants moved to dismiss Plaintiffs' claims, arguing that the claims are barred under the doctrines of res judicata and collateral estoppel and fail under Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 22, 23). Plaintiffs argue that their claims were not within the purview of the Arbitrator and otherwise are well-pled under Rule 12(b)(6). (Dkt. Nos. 24, 25). This matter is ripe for the Court's review.

## II.     **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). While the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III.    DISCUSSION

    **A.    Defendants Shelter, Jenny Butler, Ryan Butler, and Kacie Highsmith's motion to dismiss** (Dkt. No. 23)

The Court finds res judicata bars Plaintiffs' claims for copyright infringement (claims 2-3); tortious interference with a contract (claim 11); defamation (claims 12-13); violation of SCUPTA (claim 14); and unjust enrichment (claim 16) against Defendants Shelter, Ryan Butler, Jenny Butler, and Kacie M. Highsmith. The doctrine of res judicata, or claim preclusion, "bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34 (1999). Importantly, under res judicata, litigants are precluded from "relitigating claims that *were or could have been raised* in that action." *Venture Eng'g, Inc. v. Tishman Const. Corp. of S.C.*, 360 S.C. 156, 162 (Ct. App. 2004) (emphasis added) (citations omitted). "To establish res judicata, the defendant must prove the following three elements: (1)

6

identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit." *Plum Creek Dev. Co.*, 334 S.C. at 34.

> 1. <u>Res judicata Bars Plaintiffs' claims for Copyright Infringement, Tortious Interference, Defamation, Violation of SCUPTA, and Unjust Enrichment.</u>

"The first element requires the same identity of the parties or their privies." *Equivest Fin., LLC v. Ravenel*, 422 S.C. 499, 508 (Ct. App. 2018). "One in privity is one whose legal interests were litigated in the former proceeding." *Roberts v. Recovery Bureau, Inc.*, 316 S.C. 492, 496 (Ct. App. 1994). For example, "[p]rivies are those who are so connected with the parties in estate, or in blood, or in law, as to be identified with them in interest." *Equivest Fin., LLC*, 422 S.C. at 507 (quoting *Bailey v. U.S. Fid. & Guar. Co.*, 185 S.C. 169 (1937)). "[T]he concept of privity rests not on the relationship between the parties asserting it, but rather on each party's relationship to the subject matter of the litigation." *Yelsen Land Co. v. State*, 397 S.C. 15, 22 (2012).

> a. *Defendant Kacie M. Highsmith, individually and as Trustee of the Kacie M. Highsmith Trust*

First, the Court finds that Defendant Kacie M. Highsmith, individually, satisfies the first element, as she was a party to the arbitration. Furthermore, the Court finds that Defendant Kacie M. Highsmith, as Trustee of the Kacie M. Highsmith Trust ("Defendant Highsmith Trust"), is in privity with Defendant Kacie M. Highsmith. Simply put, Defendant Highsmith Trust is a privy because its "legal interests were litigated in the former proceeding," *Roberts v. Recovery Bureau, Inc.*, 316 S.C. 492, 496 (Ct. App. 1994), and its relationship to the subject matter of the arbitration was identical to Defendant Kacie M. Highsmith's. Plaintiffs do not allege that Defendant Highsmith Trust is any way distinct from Defendant Kacie M. Highsmith or that the administration of the Kacie M. Highsmith Trust is at issue in this case.

> b. *Defendants Shelter; Ryan Butler, individually and owner of Shelter; Jenny Butler, individually and design coordinator of Shelter*

The Court finds that Defendant Shelter satisfies the first element, as it was a party to the arbitration. Furthermore, the Court finds that Defendants Ryan Butler and Jenny Butler are privies of Defendant Shelter. As Defendants point out, the allegations of the amended complaint "focus on actions of the Butlers taken in connection to the Contracts between the Highsmiths and Shelter or Design Gaps and Shelter." (Dkt. No. 23 at 7-8). For example, inter alia, Plaintiffs allege "[t]he first contract, dated August 18, 2020, was for $234,602.35 and was executed by Kacie Highsmith, Ryan Butler on behalf of Shelter." (Dkt. No. 17 at ¶ 17). Plaintiffs, however, do not allege that that Defendants Ryan Butler and Jenny Butler acted outside of their capacity as owners and agents of Shelter. Accordingly, Defendants Ryan Butler and Jenny Butler are privies of Shelter because Shelter "represent[ed] the same legal right" that Defendants Ryan Butler and Jenny Butler would have had in the arbitration. *Roberts v. Recovery Bureau, Inc.*, 316 S.C. 492, 496 (Ct. App. 1994).

"The second element requires the subject matter be identical." *Equivest Fin., LLC*, 422 S.C. at 508. The contracts at issue contained the following arbitration clause:

> ARBITRATION. *All disputes arising out of or in connection with* this Agreement or any transaction hereunder *shall be finally settled* under the Commercial Arbitration Rules of the American Arbitration Association then in effect byan [sic] arbitrator appointed in accordance with such Rules. (Dkt. No. 17-43 at 2) (emphasis added).

The Arbitrator found that "[s]ince the Agreement requires arbitration of all disputes arising out of the contract or transactions thereunder, I find that the Agreement requires that any claims arising out of or in connection with the Agreement or any transaction hereunder shall be subject to arbitration." (*Id.*). Accordingly, under the broad language of the arbitration provision, the Arbitrator found Plaintiffs were entitled to assert a panoply of counterclaims: negligence; material

8

breach of contract; fraudulent misrepresentation; failure to mitigate damages; tortious interference; civil conspiracy; unfair and deceptive trade practices; violation of the Copyright Act; and conversion. (*Id.* at 2-3).

With respect to Plaintiffs' counterclaims, the Arbitrator found that Plaintiffs were "entitled to take nothing under their counterclaims." (Dkt. No. 17-41 at 6). The Arbitrator found that:

> Respondents did not [1] prove any false or reckless representation. . . [2] establish any tortious interference. . . [3] establish that there was a civil conspiracy . . . [4] establish that Claimants' conduct was unfair or deceptive. . . [5] establish that the conduct it complains of was repetitive or in violation of the public interest. . . [6] Finally, since the parties entered a written contract, there cannot be a separate "quasi" contract recovery. . . [7] Claimants certainly established fair use of the design work, especially considering that Shelter did not profit from the design . . . [8] Respondents failed to prove that Claimants or anyone else converted its designs for this project. (*Id.*).

The Court finds that the following claims were raised in the arbitration and are asserted here again: copyright infringement (claims 2-3) ; tortious interference with a contract (claim 11); violation of SCUPTA (claim 14), and unjust enrichment[3] (claim 16).

Plaintiffs' defamation claims (claims 12-13) are barred by res judicata, as claims that should have been raised in the arbitration. The Arbitrator's Interim Order addressed the issue arbitrability. (Dkt. No. 17-43). The Arbitrator found that "any claims arising out of or in connection with the Agreement or any transaction hereunder shall be subject to the arbitration." *(Id*. at 2). Plaintiffs allege that Defendant Kacie M. Highsmith wrote the following defamatory

---

[3] The Arbitrator found "since the parties entered a written contract, there cannot be a separate 'quasi' contract recovery. (Dkt. No. 17-41 at 6). "The terms 'restitution' and 'unjust enrichment' are modern designations for the older doctrine of quasi-contracts." *Williams Carpet Contractors, Inc. v. Skelly*, 400 S.C. 320, 325 (Ct. App. 2012) (quoting *Ellis v. Smith Grading & Paving, Inc.*, 294 S.C. 470, 473 (Ct.App.1988).

statement: "'David Glover 'has taken our money and not provided the product and service he promised.'" (Dkt. No. 17 at ¶ 209). The Court finds that this clearly arises out of and relates to the home renovation contracts.

"The third element. . . requires a final, valid judgment on the merits." *Equivest Fin., LLC*, 422 S.C. at 508-09. "[A]n arbitration award is a final, binding award on the merits." *Palmetto Homes, Inc. v. Bradley*, 357 S.C. 485, 494 (Ct. App. 2004).

This Court similarly finds that res judicata bars both the claims that were actually arbitrated (copyright act, tortious interference, SCUPTA, and unjust enrichment) and claims that could have been arbitrated (defamation). *See Palmetto Homes, Inc.*, 357 S.C. at 495 ("Therefore, when the arbitration proceedings began, all claims arising from the contract were submitted to the arbitration proceeding, and, as with civil litigation, Contractor was procedurally required to arbitrate all claims arising therefrom or be barred by res judicata.").

2. <u>Plaintiffs' Lanham Act and Breach of Contract Claims survive Rule 12(b)(6).</u>

The Court denies Defendants' motions to dismiss Plaintiffs' Lanham Act claims (claims 4, 5, and 7) and breach of contract claims (claims 8-9). It appears that all five claims are based on the allegation that Shelter did not properly "provide the requisite attribution to Design Gaps" in accordance with a "Promotional Use Clause." (Dkt. No. 17 at ¶¶ 185, 187). While Defendants hotly contest the merits and duplicity of these claims, the Court finds that Plaintiffs have pled enough to survive Rule 12(b)(6) scrutiny. While Defendants argue that Plaintiffs' Lanham Act claims are barred by laches (Dkt. No. 23 at 13) and that the breach of contract claims are barred by the statute of limitations (*Id.* at 15), "[a] motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Summary judgment,

accompanied with more complete briefing and a fuller record, is a more appropriate vehicle to challenge these claims.

> B. **Defendants Distinctive Design, Bryan Reiss, and Wendy Reiss's motion to dismiss** (Dkt. No. 22)

As stated above, the Highsmiths and Shelter hired Distinctive Design to finish the cabinets and closets that Design Gaps was initially hired to furnish. Design Gaps alleges that Shelter emailed Distinctive Design "the technical drawings for [Design Gaps'] Designs intending that [Distinctive Design] would use these in the work that [it] was to do for the Highsmiths." (*Id.* at ¶ 56). Design Gaps alleges that "[t]he use of [Design Gaps'] Designs at the Residence constituted direct infringement of [Design Gaps'] works subject to copyright protection." (*Id.* at ¶ 59).

The Court finds collateral estoppel bars Plaintiffs' claims for copyright infringement (claim 1); violation of the Lanham Act (claim 6); tortious interference with a contract (claim 10); violation of SCUPTA (claim 14); South Carolina Trade Secrets Act (claim 15); and unjust enrichment (claim 16) against Defendants Distinctive Design, Bryan Reiss, and Wendy Reiss. Under the doctrine of collateral estoppel, or issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). To successfully invoke collateral estoppel, the proponent must prove that "(1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate

the issue or fact in the prior proceeding." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

The Court will address the Defendants' motion to dismiss below, claim by claim. As a preliminary matter, however, the Court finds that the last three elements of the collateral estoppel test are universally satisfied for each claim discussed below: the Court finds that for each claim the issue was critical and necessary to the judgment; the judgment is final and valid; and Plaintiffs had a full and fair opportunity to litigate each issue.

Plaintiffs asserted the following counterclaims in the Arbitration: negligence; material breach of contract; fraudulent misrepresentation; failure to mitigate damages; tortious interference; civil conspiracy; unfair and deceptive trade practices; violation of the Copyright Act; and conversion. (Dkt. No. 17-41 at 2). Indeed, the Arbitrator found that "the Agreement requires that any claims arising out of or in connection with the Agreement or any transaction hereunder shall be subject to arbitration." (Dkt. No. 17-43 at 2). Thus, as it pertains to the claims discussed below, these were not tangential issues that the Arbitrator considered in passing or treated in dicta; instead, these were counterclaims that were at issue and actually determined. Furthermore, at the conclusion of a three-day merits hearing, Plaintiffs "advised that they had adequate opportunity to present their case with all relevant testimony and exhibits." (Dkt. No. 17-41 at 2). Accordingly, Plaintiffs certified that they had the full and fair opportunity to litigate these issues. Finally, the Arbitrator issued his final award, which was confirmed by this Court in *Design Gaps, Inc. v. Shelter, LLC*, No. 2:22-cv-4698-RMG, Dkt. No. 14 (D.S.C. May, 19, 2023). Accordingly, the Court, finding that the other elements are met, will only address whether "(1) the issue or fact is identical to the one previously litigated" and whether "(2) the issue or fact was actually resolved in the prior proceeding." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d at 326.

1. <u>Collateral Estoppel Bars Plaintiffs' Copyright Claim (Claim 1).</u>

The Court finds that Plaintiffs' copyright claim is precluded by the doctrine of collateral estoppel. The issue here is whether Distinctive Design infringed on Plaintiffs' copyright. The Court finds that this issue was also before the Arbitrator, and the Arbitrator found that no one, including Distinctive Design, infringed Plaintiffs' copyright:

> Respondents failed to enter into evidence a valid copyright registration; however, even if they had, Claimants certainly established fair use of the design work, especially considering that Shelter did not profit from the design. The sharing of a pdf of the design did not materially impair the marketability of the design. *Respondents failed to prove that Claimants or anyone else converted its designs for this project.* Bryan Reiss of Distinctive Design confirmed that he did not use Design Gaps' designs for the cabinets. I am convinced by Reiss's testimony and the exhibits provided that any similarity in the designs is due to the limitations of the space and the client's desired layout. Therefore, *there has been no violation of any copyright* which Respondent may have had. (Dkt. No. 17-41 at 6-7) (emphasis added).

Plaintiffs' main argument against the application of collateral estoppel is that they "did not have the full and fair opportunity to litigate the copyright infringement issue against Defendant Bryan Reiss and Distinctive Design in the arbitration since the Arbitrator refused to join them as parties to the arbitration." (Dkt. No. 24 at 10). Nevertheless, as the United States Supreme Court explained, "[d]efense use of collateral estoppel" promotes judicial economy by "preclude[ing] a plaintiff from relitigating identical issues *by merely 'switching adversaries*.'" *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (emphasis added) (citations omitted). Plaintiffs had the full and fair opportunity to litigate the copyright infringement *issue* even though the Defendants were not joined. This is especially true since Plaintiffs' still deposed Bryan Reiss, who testified, submitted exhibits, and participated in the Arbitration. *Cf. Guarantee Tr. Life Ins. Co. v. First*

*Student Programs, LLC,* No. 05 C 1261, 2009 WL 2913500, at *3 (N.D. Ill. Sept. 9, 2009) (finding that a nonparty was in privity with a party in an earlier litigation where, inter alia, the primary evidence considered in the earlier litigation was testimony from the nonparty).

Accordingly, the Court finds that the issue of whether Distinctive Design infringed Plaintiffs' copyright was previously litigated and actually resolved in the Arbitration. Therefore, collateral estoppel bars Plaintiffs' copyright claim.

    2. <u>Collateral Estoppel Bars Plaintiffs' Unjust Enrichment Claim (Claim 16).</u>

The Court finds that Plaintiffs' unjust enrichment claim fails with their copyright claim. Plaintiffs allege that "Defendants' use of designs that have directly been copied from and/or are confusingly similar to Plaintiffs' visual designs has resulted in unjust enrichment of Defendants, who have benefited and will continue to benefit from Plaintiffs investment, goodwill and public recognition in its visual designs." (Dkt. No. 17 at ¶ 243). In other words, Plaintiffs allege Defendants are being unjustly enriched because they are profiting from their infringement of Plaintiffs' copyright. As Plaintiffs' copyright claim is barred by the doctrine of collateral estoppel, so too is Plaintiffs' unjust enrichment claim barred because the claim depends on a finding that Plaintiffs' copyright was in fact infringed. That issue has already been decided and cannot be relitigated here under the guise of a different cause of action.

    3. <u>Collateral Estoppel Bars Plaintiffs' Tortious Interference Claim (Claim 10).</u>

The Court finds that Plaintiffs' tortious interference claim is precluded by the doctrine of collateral estoppel. The issue here is whether Distinctive Design tortiously interfered with Plaintiffs' contract. The Court finds that this issue was also before the Arbitrator, and the Arbitrator found that no one, including Distinctive Design, interfered with Plaintiffs' contract:

> While the contracts did not contain specified completion dates, Design Gaps did provide a series of completion dates, which it did not meet. During the hearing, Design Gaps set out a number of reasons for the delays which it argued were beyond its control. However, it continued to provide unreliable completion dates to the Claimants. *The repeated failure to meet the many dates promised for completion justifies the termination of the contracts. . . Respondents did not establish any tortious interference* in its contract by any party. (Dkt. No. 17-41 at 5) (emphasis added).

Plaintiffs allege, inter alia, that the Distinctive Design Defendants "intentionally, unjustifiably, and with improper purpose interfered with Plaintiffs' contractual and business relations." (Dkt. No. 17 at ¶ 197). According to Plaintiffs, "the interference caused Shelter and the Highsmiths to breach and/or terminate the Contracts, prospective additional design, purchase, and installation services, other business relationships, and/or other expectancies with Plaintiffs." (*Id.* at ¶ 198).

Plaintiffs' tortious interference claim is barred for two clear reasons. First, the Arbitrator expressly found that Plaintiffs' "did not establish any tortious interference in its contract by any party." (Dkt. No. 17-41 at 5). Second, "[a]n essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach . . . Where there is no breach of the contract, there can be no recovery." *Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 372 S.C. 470, 481 (2007). The Arbitrator found that Plaintiffs' "repeated failure to meet the many dates promised for completion justifies the termination of the contracts." (Dkt. No. 17-41 at 5). Thus, Plaintiffs cannot establish an essential element of the claim.

Accordingly, the Court finds that the issue of whether there was tortious interference with Design Gaps' contract was previously litigated and resolved in the Arbitration. Therefore, collateral estoppel bars Plaintiffs' tortious interference claim.

4. <u>Collateral Estoppel Bars Plaintiffs' SCUPTA Claim (Claim 14).</u>

The Court finds that Plaintiffs' SCUPTA claim is precluded by the doctrine of collateral estoppel. The issue here is whether Distinctive Design engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE ANN. § 39–5–20(a). The Court finds that this issue was before the Arbitrator, and the Arbitrator found that Plaintiffs did not meet their burden to prove a SCUPTA claim:

The Arbitrator found "Respondents did not establish that Claimants' conduct was unfair or deceptive and therefore cannot sustain an unfair trade practices act claim. Respondents did not establish that the conduct it complains of was repetitive or in violation of the public interest." (Dkt. No. 17-41 at 6).

Accordingly, the Court finds that the issue of whether Distinctive Design violated SCUPTA was previously litigated and resolved in the Arbitration. Therefore, collateral estoppel bars Plaintiffs' SCUPTA claim.

5. <u>Collateral Estoppel Bars Plaintiffs' Lanham Act Claim (Claim 6).</u>

The Court finds that Plaintiffs' Lanham Act claim must be dismissed. First, Plaintiffs' Lanham Act claim is duplicative of their copyright claim and is barred by collateral estoppel. "Where a plaintiff's Lanham Act claim merely alleges that the defendant made unauthorized use of a copyrighted work, the Lanham Act claim will be dismissed as duplicative of the copyright claim." *Mitchell Int'l, Inc. v. Fraticelli*, No. 03-1031, 2007 WL 4197583 at *12 (D.P.R. Nov. 26, 2007). *See, e.g.*, Kregos v. Associated Press, 937 F.2d 700, 711 (2d Cir. 1991) ("[W]e reject his attempt to convert all copyright claims into Lanham Act violations."); *Jalbert v. Grautski*, 554 F. Supp. 2d 57, 74 (D. Mass. 2008) ("Because the Lanham Act claim is simply a copyright infringement claim in different clothing, it is duplicative of the copyright claim and should be

dismissed."). As discussed with respect to many of Plaintiffs' claims, Plaintiffs' Lanham Act claim seeks to relitigate the copyright issue already decided in the Arbitration.

In order to sue under the Lanham Act, "a plaintiff under § 1125(a) ordinally must show economic or reputation injury flowing directing from" a defendant's violation of the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). However, this issue is foreclosed. The Arbitrator ruled expressly found that Plaintiffs' "repeated failure to meet the many dates promised for completion justifies the termination of the contracts." (Dkt. No. 17-41 at 5) Thus, Plaintiffs could never show proximate cause because it would require them to argue either that their copyright was infringed or that some Defendants breached the contract. Both issues have already been decided and cannot be relitigated now.

Accordingly, the Court finds that the issue of whether Plaintiffs' copyright was infringed, which is the basis of Plaintiffs' Lanham Act claim, was previously litigated and resolved in the Arbitration. Therefore, collateral estoppel bars Plaintiffs' Lanham Act claim.

6. <u>Collateral Estoppel Bars Plaintiffs' South Carolina Trade Secrets Act (Claim 15).</u>

"To establish a claim for misappropriation of trade secrets under the South Carolina Trade Secrets Act, a plaintiff must show: (1) the existence of a trade secret; (2) misappropriation, wrongful use, or wrongful disclosure of a trade secret by the defendant; and (3) damages." *Sonoco Prod. Co. v. Guven*, No. 4:12-CV-00790-BHH, 2015 WL 127990, at *6 (D.S.C. Jan. 8, 2015).

Plaintiffs' claim is precluded under collateral estoppel because the Arbitrator already decided this issue. Plaintiffs allege "[i]n coordination with the breach of the Contracts, Defendant Jenny Butler chose to share with defendant Bryan Reiss, Plaintiffs' Trade Secrets in proceeding with the construction activities at the Residence." (Dkt. No. 17 at ¶ 233). On this exact issue, the Arbitrator found:

17

> Respondents failed to prove that Claimants or anyone else converted its designs for this project. Bryan Reiss of Distinctive Design confirmed that he did not use Design Gaps' designs for the cabinets. I am convinced by Reiss's testimony and the exhibits provided that any similarity in the designs is due to the limitations of the space and the client's desired layout. (Dkt. No. 17-41 at 6-7).

The Court finds that Plaintiffs' claim is barred by collateral estoppel because whether there was "misappropriation, wrongful use, or wrongful disclosure of a trade secret by the defendant" is an issue that was addressed in Arbitration. *Sonoco Prod. Co. v. Guven*, No. 4:12-CV-00790-BHH, 2015 WL 127990, at *6 (D.S.C. Jan. 8, 2015).

The Court also dismisses this claim under Rule 12(b)(6) to the extent that Plaintiffs alleges to tether this claim to actions that have occurred since the arbitration. Particularly, Plaintiffs allege "[u]pon information and belief, Distinctive Design. . . continues to use Plaintiffs' Trade Secrets in an improper and unlawful manner." (Dkt. No. 17 at ¶ 234). They also allege that Distinctive Design "continues to use Plaintiffs' Trade Secrets misappropriated to them through Defendant Jenny Butler to solicit and serve customers and unfairly compete with Design Gaps in the marketplace." (Dkt. No. 17 at 235).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Plaintiffs' conclusory allegations that Defendants continue to use Plaintiffs' trade secrets are not plausible. As the Court reasoned above, the Arbitrator already decided that there was never even a misappropriation at all. Thus, the bare allegation that Defendants continue to misappropriate,

alone, does not allow the Court to draw the reasonable interference that Defendants are liable for the misconduct alleged, i.e., the claim is not facially plausible.

## IV.     CONCLUSION

The Court grants Defendants Distinctive Design, Bryan Reiss, and Wendy Reiss' motion to dismiss. (Dkt. No. 22). Accordingly, all claims against Defendants Distinctive Design, Bryan Reiss, and Wendy Reiss are dismissed.

The Court grants Defendants Shelter, Jenny Butler, Ryan Butler, and Kacie Highsmith's motion to dismiss in part. (Dkt. No. 23). All claims against Defendant Kacie M. Highsmith, individually and as Trustee of the Highsmith Trust, are dismissed. Accordingly. only Plaintiffs' claims against Defendants Shelter, Jenny Butler, and Ryan Butler remain in part. As to those Defendants, the only claims that remain are Plaintiffs' Lanham Act claims (claims 4, 5, and 7) and breach of contract claims (claims 8 and 9).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard M. Gergel
United States District Judge

August 17, 2023
Charleston, South Carolina

19