IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Design Gaps, Inc., David Glover, Individually and as Officer of Design Gaps, Inc., and Eva Glover, Officer of Design Gaps, Inc.,<br><br>    Plaintiffs,<br> v.<br><br>Distinctive Design & Construction LLC, d/b/a Distinctive Design LLC, Bryan Reiss, individually and President of Distinctive Design LLC, Wendy Reiss, individually and Vice President of Distinctive Design LLC, Shelter, LLC, d/b/a as Shelter Custom-Built Living, Ryan Butler, individually and Owner of Shelter Custom-Built Living, Jenny Butler, individually and Design Coordinator Shelter Custom-Built Living, and Kacie M. Highsmith, individually and as Trustee of the Kacie M. Highsmith Trust,<br><br>    Defendants. | Case No. 2:23-cv-00197-RMG<br><br>**ORDER AND OPINION** |

  Before the Court is Defendants' motion for summary judgment. (Dkt. No. 54). Plaintiffs responded (Dkt. No. 55), and Defendants replied (Dkt. No. 56). For the reasons set forth below, the Court grants Defendants' motion.

  **I.  INTRODUCTION**

  The remaining claims in this dispute arise from various contracts entered into by Defendants Shelter, Ryan Butler[1] and Jenny Butler and Plaintiffs Design Gaps, David Glover and

---

[1] Ryan Butler passed away during the pendency of this litigation. His interests are represented by Jenny Butler. (Dkt. No. 51).

1

Eva Glover to design and install cabinetry for eight residences.[2] Plaintiffs allege that Defendants did not accredit them in various advertisements incorporating their designs in violation of the Lanham Act and a Promotional Use Clause contained in the Parties' various contracts. (Dkt. No. 17, ¶¶ 185, 191). One of the at-issue contracts concerns the "Ralston Creek 2" project, which was the subject of an arbitration between the Parties. (Dkt. No. 17-2; *see also* Dkt. No. 17-41). The arbitrator determined that Defendants validly terminated the contract and denied relief on each of Plaintiffs' counterclaims. (Dkt. No. 17-41 at 5-6). Plaintiffs subsequently filed this action, representing their present claims are "either unrelated to the decisions in the Arbitration or expressly dismissed by the arbitrator in the Arbitration" such that "res judicata does not exist between [the Arbitrator's] decisions and the claims that have been included in this lawsuit." (Dkt. No. 17, ¶¶ 111, 113).

Defendants moved to dismiss Plaintiffs' claims. (Dkt. No. 23). This Court held that res judicata barred Plaintiffs' claims for copyright infringement (claims 2-3), tortious interference with a contract (claim 11), defamation (claims 12-13), violation of SCUPTA (claim 14), and unjust enrichment (claim 16) against Defendants Shelter, Ryan Butler, Jenny Butler and Kacie M. Highsmith, but that Plaintiffs' Lanham Act (claims 4, 5, 7) and breach of contract (claims 8, 9) claims against Defendants Shelter, Ryan Butler and Jenny Butler survived dismissal. (Dkt. No. 29 at 6-10). The Court explained that Defendants' arguments regarding the application of laches and the statute of limitations to bar Plaintiffs' remaining claims were more appropriate for summary judgment. (*Id.* at 10; *see also* Dkt. No. 23 at 13, 15). The motions are now ripe for review.

---

[2] *See* Dkt. Nos. 17-2, 17-3, 17-10, 17-17, 17-23, 17-26, 17-31, 17-35, 17-38.

## II. LEGAL STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## III. DISCUSSION

Defendants move for summary judgment on four grounds, arguing: (1) Plaintiffs' Lanham Act claims (claims four, five and seven) are barred by the doctrine of laches; (2) Plaintiffs' Lanham Act claim for unfair competition (claim seven) and breach of contract claims (claims eight and

3

nine) are barred by res judicata; (3) Plaintiffs' breach of contract claims are additionally barred by the statute of limitations; and (4) Plaintiffs waived their breach of contract claims. (Dkt. No. 54-1). The Court discusses each argument in turn.

### A. Res Judicata (Claims Seven, Eight & Nine)

The Court begins by considering whether any of Plaintiffs' claims are barred by res judicata as a result of Plaintiffs' failure to raise them in the arbitration.

"Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties. Under the doctrine of res judicata, [a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Judy v. Judy*, 712 S.E.2d 408, 414 (S.C. 2011) (quoting *Plum Creek Dev. Co. v. City of Conway*, 512 S.E.2d 106, 109 (S.C. 1999) (internal quotations omitted)). To establish a claim is barred by res judicata, a defendant must prove the (1) identity of the parties, (2) identity of the subject matter, and (3) adjudication of the issue in the former suit. *Venture Eng'g, Inc. v. Tishman Const. Corp. of S.C.*, 600 S.E.2d 547, 550 (S.C. Ct. App. 2004).

Defendants argue "Plaintiffs' seventh, eighth, and ninth causes of action are barred by res judicata because they assert misuse of Plaintiff's Designs that were at issue in the prior Arbitration," explaining that "'Plaintiffs' Designs' is a defined term in the Amended Complaint, which Plaintiffs' defined to mean the drawings prepared for use at Ralston Creek 2 that were registered with the United States Copyright Office." (Dkt. No. 54-1 at 23; *see also* Dkt. No. 17, ¶ 53 (defining "[t]he Main House Cabinet Designs and the Master Bath Closet Designs" as "'Plaintiffs' Designs'")). Per Defendants, "Because 'Plaintiffs' Designs' were prepared in accordance with the Ralston Creek 2 Contracts and because use of Plaintiffs' Designs was

4

specifically arbitrated, Plaintiffs are precluded from asserting an unfair competition claim based on the same 'Plaintiffs' Designs" and "[s]imilarly, Plaintiffs' breach of contract causes of action are both based on misuse of 'Plaintiffs' Designs'" which "Plaintiffs have already had their chance to litigate . . . ." (Dkt. No. 54-1 at 24-25).  Plaintiffs respond by explaining they did not intend to confine their seventh, eighth, and ninth causes of action to the Ralston Creek 2 project, but rather intended to "more broadly use the term" "to collectively refer to those designs that have been and are used on Defendants' websites." (Dkt. No. 55 at 22).  Plaintiffs contend that as "the claims associated with the remaining properties have not yet been litigated in any court or in the referenced arbitration, they should not be barred by the doctrine of *res judicata*." (*Id.* at 23).

While Plaintiffs may have been inartful in pleading their seventh, eighth, and ninth causes of action, the Court will not rigidly enforce the narrower definition of "Plaintiffs' Designs" where Plaintiffs have explained these claims arise from other contracts.  However, to the extent Plaintiffs seek relief under these three causes of action pertaining to the Ralston Creek 2 project, which Plaintiffs attached as Exhibits B and C to their Amended Complaint (Dkt Nos. 17-2, 17-3), any such claims are barred by res judicata as those contracts were the subject matter of the arbitration between the Parties.  (*See* Dkt. No. 29 at 9; Dkt. No. 17-41 at 2 (citing contracts at issue in the arbitration)).

### B.  Lanham Act Claims (Claims Four, Five & Seven)

Plaintiffs pursue three claims under the Lanham Act: (1) false advertising (Dkt. No. 17 at 38 (claim four)), (2) false designation of origin (*id.* at 44 (claim five)), and (3) unfair competition (*id.* at 47 (claim seven)).  Plaintiffs cite various advertisements published by Defendants on Shelter's website and in trade publications as evidence of the purported violations. (*Id.*, ¶¶ 60-103).  Defendants argue that Plaintiffs' Lanham Act claims are barred by laches where "Plaintiffs

5

unreasonably sat on their rights to the prejudice of Defendants," contending that Plaintiffs were aware of their claims by April 2, 2018 at the latest but waited nearly five years to file this litigation. (Dkt. No. 54-1 at 14).

"Laches is an equitable defense" that "generally applies to preclude relief for a plaintiff who has unreasonably slept on his rights." *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 294 (4th Cir. 2021) (internal citations omitted). The doctrine is "distinct from the statute of limitations," but may be presumed to apply where a claim under the Lanham Act has been brought within the limitations period for an analogous state statute. *Id.* South Carolina courts have determined the analogous limitations period for a Lanham Act violation to be three-years. *Secret of the Islands, Inc. v. Hymans Seafood Co., Inc.*, No. 2:17-CV-342-BHH, 2019 WL 917209, at *7 (D.S.C. Feb. 25, 2019) (citing S.C. Code Ann. § 15–3–530, which provides for a three-year limitations period for actions other than for recovery of real property).

To determine whether laches operates to bar consideration of a claim, the court considers "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user has been unduly prejudiced by the owner's delay." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012). "The party seeking to establish laches must show (1) delay, (2) unreasonable delay, and (3) prejudice." *Emery v. Smith*, 603 S.E.2d 598, 602 (S.C. Ct. App. 2004). "The question whether a trademark owner knew or should have known that it had a viable claim for infringement is determined by an objective standard." *Id.* "When a false advertising plaintiff files suit outside of the statute of limitations, both elements of laches— unreasonable delay and prejudice—are strongly presumed." *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011).

In Defendants' view, Plaintiffs' Lanham Act claims are barred by laches because "Shelter has been using the same advertising methods since at least early 2015, and Plaintiffs were indisputably aware of the same since 2016." (Dkt. No. 54-1 at 16, 17). As a result, Plaintiffs' delay in filing the present action until January 13, 2023 was unreasonable where it "knew or should have known of the claimed wrongful conduct no later than April 2, 2018," resulting in both economic and evidentiary prejudice to Defendants. (*Id.* at 21-23).

Plaintiffs contest this characterization, arguing that "[w]ith [the] variation in use of Plaintiffs' Works among Defendants advertisements, the subject-matter and message of the advertisements varied" such that they should not be treated as one continuing offense. (Dkt. No. 55 at 16). Plaintiffs further argue that "they did not have knowledge and there was no reason for them to have knowledge that they had a claim for Lanham Act violations at the time the Cease-and-Desist Letter was issued" and contend any delay was excusable because Plaintiffs attempted to reach a resolution with Defendants. (*Id.* at 17; *see also* Dkt. No. 54-24). Plaintiffs also claim that Defendants have economically benefitted by continuing to advertise Plaintiffs' work as their own, and contend any evidentiary prejudice is attributable to Defendants. (*Id.* at 20-21).

### 1. Unreasonable Delay

In determining whether Plaintiffs' delay in filing this action was reasonable, the Court first considers whether Defendants' various advertisements between 2016-2021 should be treated as one continuing offense. "[T]he presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period." *Jarrow Formulas v. Nutrition Now*, 304 F.3d 829, 837 (9th Cir. 2002). As a result, Plaintiffs will be barred from pursuing their Lanham Act claims if it "fail[ed] to file suit promptly when the defendant commences the wrongful conduct." *Id.* at 837-38.

Plaintiffs aver that they "first became aware of Defendants unauthorized and non-promotional use of Plaintiffs' Works in the Fall 2016 issue of Charleston Home + Design," at which point David Glover complained to Ryan Butler. (Dkt. Nos. 55 at 2; 54-16). Plaintiffs next point to their discovery on March 4, 2017 that "Defendants were using images of Plaintiffs' work on the Houzz home design website without referring to Design Gaps as the supplier and designer of the works pursuant to the requirements of the Promotional Use Clause." (Dkt. No. 55 at 2). By April 2018, "Plaintiffs had became aware that Defendants were featuring and showcasing on Defendants' office walls, their website, social media sites, printed advertising, and through a television show . . . Plaintiffs' cabinetry without any attribution to Plaintiffs as the provider of such designs and installations pursuant to the requirements of the Promotional Use Clause in the Agreements." (*Id.* at 8). This prompted David Glover to send a cease-and-desist letter to Ryan Butler advising him that "[i]t has come to our attention that our designs and work is being used by Shelter, LLC in violation of the Terms and Conditions of our contracts with your company . . . as they are predominately featured and showcased on your office wall, website, social media, printed advertising, and the Today's Builder Television Show." (Dkt. No. 54-24 at 2). Plaintiffs also invoked the Lanham Act's prohibition against false and/or misleading advertising. (*Id.*). Plaintiffs appear not to have made any further complaints regarding Defendants' purported violations of the Parties' contracts or the Lanham Act after sending this letter on April 2, 2018, until filing the present action on January 17, 2023.

In addition to complaints regarding Defendants' website, Plaintiffs complain of six publications post-dating the April 2, 2018 cease-and-desist letter: (1) the Architectural Digest Winter 2021 Edition (Dkt. No. 17-14), (2) the Charleston Style & Design Summer 2021 Edition (Dkt. No. 17-15), (3) the Charleston Home + Design Winter 2022 Edition (Dkt. No. 17-16), (4)

8

the Charleston Home + Design Fall 2020 Edition (Dkt. No. 17-21), (5) a Charleston Home + Design Blog dated April 27, 2021 (Dkt. No. 17-22), (6) the Charleston Home + Design Magazine Fall 2019 Edition (Dkt. No. 17-30). It is not clear when Defendants uploaded the contested images to their website. (*See* Dkt. Nos. 17-8, 17-9, 17-12, 17-13, 17-19, 17-25, 17-28, 17-33, 17-37, 17-40). However, just two of the contracts Plaintiffs allege Defendants to have breached were entered into after the April 2, 2018 letter, and presumptively the offending images were uploaded to Shelter's website after that date. (*See* Dkt. Nos. 17-10, 17-17).[3]

Defendants contend the fact they did not respond to this letter nor cease advertising Plaintiffs' designs on their website evidences Plaintiffs' knowledge of the ongoing infringement, making their delay in filing this action unreasonable. (Dkt. No. 54-1 at 20-21). Plaintiffs respond that they "were not in possession of enough information to claim that Defendants had violated the Lanham Act prior to the time the Arbitration had been filed," as it was only upon filing the arbitration that "Plaintiff David Glover began to more closely research the unauthorized use of Plaintiffs' works by the Defendants." (Dkt. No. 55 at 14-15).

Defendants rely on *PBM Products, LLC v. Mead Johnson & Company* in arguing the advertisements should be treated as one continuing offense, barring Plaintiffs' claims from consideration as falling outside the limitations period. (Dkt. No. 54-1 at 16-18). In *PBM Products*, the manufacturer of a brand-name infant formula filed a false advertising counterclaim against the generic brand's manufacturer based on "compare to" statements that appeared on the generic brand's label. No. 3:09-CV-269, 2010 WL 723750, at *1 (E.D. Va. Mar. 2, 2010), *aff'd*, 639 F.3d 111 (4th Cir. 2011). The generic manufacturer presented evidence that it had first used the

---

[3] As previously discussed in this Order, any claims regarding the Ralston Creek 2 contract are barred by res judicata and not considered. (*See* Dkt. No. 17-2).

"compare to" advertising language in a 2003 campaign, and that the parties had engaged in trademark litigation over a label containing similar "compare to" claims in 2006. *Id.* at *3. As the brand name manufacturer did not file this claim until 2009, the district court held that it was barred by laches, reasoning that "the [brand name manufacturer's] unreasonable delay resulted in prejudice to the [generic manufacturer] due to [its] continued use of the advertisement" and "permitting th[e] suit to go forward would enable it to benefit from its own unreasonable delay." *Id.* The Fourth Circuit affirmed. 639 F.3d 111, 121.

Similarly, Defendants urge this Court to recognize that Plaintiffs were on notice of Defendants' advertising activities as early as October 2016, and no later than April 2, 2018, such that Plaintiffs' claims fall outside the limitations period and are presumptively barred. (Dkt. No. 54-1 at 21-22). Plaintiffs contend their delay was not unreasonable because (1) "they did not have knowledge and there was no reason for them to have knowledge that they had a claim for Lanham Act violations at the time the Cease-and-Desist Letter was issued" and (2) "Plaintiffs periodically reminded Defendants of their use of Plaintiffs images without providing attribution that such images belonged to Plaintiffs" such that the delay "was excusable and not unreasonable." (Dkt. No. 55 at 17-18). The Court is not persuaded by either of Plaintiffs' arguments. First, Plaintiffs' contention that "they did not have knowledge . . . they had a claim for Lanham Act violations" at the time of sending the April 2, 2018 letter is refuted by the letter's plain text, which cites the Lanham Act's prohibition on false/and or misleading advertising. (Dkt. No. 54-24 at 2). Under an objective standard, Plaintiffs were aware they had a viable claim of infringement at the time of sending this letter. Second, Plaintiffs' claim that they "periodically reminded Defendants of their use of Plaintiffs images" cites communications *prior to* the April 2, 2018 letter, not after it. (Dkt. No. 55 at 18). Even generously construing the analogous limitations period to be triggered as of

the April 2, 2018 date, Plaintiffs' Lanham Act claims were rendered untimely as of April 2, 2021. Because Plaintiffs did not file their claims until January 17, 2023—well outside the limitations period—the Court presumes both unreasonable delay and prejudice. *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011).

### 2. Prejudice

Defendants claim they suffer economic prejudice as a result of "continuing and developing their promotional practices" "under the belief that Plaintiffs had abandoned their perceived claims." (Dkt. No. 54-1 at 22-23). Further, Defendants claim they suffer evidentiary prejudice due to "lost documents (particularly as this involves construction projects occurring ten years ago), challenges locating witnesses, and fading memories," as well as the passing of Ryan Butler who was Shelter's primary point of contact with Design Gaps. (*Id.* at 23). Plaintiffs respond by reiterating their unawareness of their Lanham Act claims "until the preparation and filing of this lawsuit" and cite the breadth of Defendants' document production as an apparent counter to their concerns regarding lost documents. (Dkt. No. 55 at 20). In Plaintiffs' view, Defendants' failure to timely and sufficiently respond to Plaintiffs' first set of interrogatories prior to Defendant Ryan Butler's passing contributes to any evidentiary prejudice that Defendants may suffer. (*Id.* at 20-21).

Plaintiffs fail to rebut the presumption that Defendants have suffered prejudice as a result of their delay in filing the present lawsuit. As Defendants have established unreasonable delay by Plaintiffs and resulting prejudice, this Court holds that laches bar Plaintiffs' Lanham Act claims (claims four, five and seven) as a matter of law.

### C. Breach of Contract Claims (Claims Eight & Nine)

Plaintiffs claim that Defendants breached the Promotional Use Clause of various agreements, which required Defendants to "reference Design Gaps, Inc. as the supplier and designer of the said area" wherever "[a]ny promotional use by others depicting the cabinetry and design [would] reference Design Gaps." (Dkt. No. 17, ¶¶ 184, 190). Defendants argue that Plaintiffs' breach of contract claims are barred by the statute of limitations and/or were waived by Plaintiffs' abandonment of their claims following the April 2, 2018 cease-and-desist letter, after which point Plaintiffs stopped protesting Defendants' showcasing of Plaintiffs' designs in their advertisements. (Dkt. No. 54-1 at 25-28).

#### 1. Statute of Limitations

In South Carolina, a breach of contract action must be brought within three years of its accrual. S.C. Code. Ann. § 15-3-530. "The discovery rule determines the date of accrual for a breach of contract action." *Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998). "Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence." *Id.* Whether a party knew or should have known of its cause of action through the exercise of reasonable diligence is an objective question for the jury. *Id.*

Defendants argue "the statute of limitations began to run October 3, 2016, or, at the absolute latest, by April 2, 2018," citing Plaintiffs' earliest complaints that Defendants had not credited Plaintiffs when showcasing their work. (Dkt. No. 54-1 at 27 (citing *id.* ¶¶ 16, 24-25; Dkt. Nos. 54-20, 54-24)). Plaintiffs argue (1) they "did not become aware of many of the breaches of the Promotional Use Clause until sometime after the Arbitration was commenced in July of 2021,

well within the three-year statute of limitations period in South Carolina" and (2) each publication constitutes a separate breach "giving rise to separate causes of action subject to new limitations periods." (Dkt. No. 55 at 24) (citing *Poly-Med, Inc. v. Novus Sci. PTE. Ltd.*, 2023 U.S. App. LEXIS 1101 @ *2-3 (4th Cir. 2023)). As a result, Plaintiffs urge this Court not to apply an April 2, 2021 limitations cut-off date for purposes of their breach of contract claims, which were filed on January 17, 2023. (*See* Dkt. No. 1).

The Court disagrees that Plaintiffs did not know, and should not have known, of their breach of contract claims "until the Arbitration was commenced in July of 2021." (Dkt. No. 55 at 24). In the April 2, 2018 cease-and-desist letter, Plaintiffs threatened to file legal action due to Defendants' "unauthorized use of the images of [Plaintiffs'] designs and work" "in violation of the Terms and Conditions of [Plaintiffs'] contracts with [Defendants'] company." (Dkt. No. 54-24 at 2). This letter referenced Defendants' publication of Plaintiffs' designs on their "office wall, website, [and] social media" as well as "printed advertising[] and the Today's Builder Television Show." (*Id.*). Plaintiffs had previously complained of Defendants' failure to give credit to Plaintiffs in the Charleston Home + Design Fall 2016 and Winter 2018 issues. (Dkt. Nos. 54-16, 54-23). Defendants admit that, notwithstanding the cease-and-desist letter, they continued posting such advertisements on their website and in trade publications. (Dkt. No. 54-1, ¶¶ 36-37). Through the exercise of reasonable diligence, Plaintiffs would have been on notice that Defendants had ignored their cease-and-desist letter and continued their alleged infringement activities by posting on their website and in Charleston Home + Design. As a result, Plaintiffs cannot sustain their claim they did not discover their breach of contract causes of action until July 2021 as it concerns images posted on Defendants' website and in Charleston Home + Design.

### 2. Waiver

There remain two publications that fall within the limitations period: the Architectural Digest Winter 2021 Edition (Dkt. No. 17-14) and Charleston Style and Design Summer 2021 Edition (Dkt. No. 17-15). Hypothetically, this would entitle Plaintiffs to maintain their breach of contract claims stemming from the Bayley Street 1 project, which is showcased in the two publications. (Dkt. No. 17-10). However, the Court holds that Plaintiffs waived their right to enforce the Promotional Use Clause of this contract.

"Waiver is a voluntary and intentional abandonment or relinquishment of a known right" that "may be expressed or implied by a party's conduct." *Skipper v. Perrone*, 674 S.E.2d 510, 514 (S.C. Ct. App. 2009). "Acts that are inconsistent with the continued assertion of a right may also give rise to a waiver." *Provident Life & Acc. Ins. Co. v. Driver*, 451 S.E.2d 924, 928 (S.C. Ct. App. 1994). "The waiver doctrine is intended to prevent the waiving party from lulling another into the false belief that strict compliance with a contractual duty will not be required and then suing for noncompliance or demanding compliance for the purpose avoiding the transaction." 17B C.J.S. Contracts § 745.

Here, Plaintiffs impliedly waived their right to enforce the Promotional Use Clause by threatening, and subsequently failing, to enforce their rights under the Parties' various contracts. After the April 2, 2018 cease-and-desist letter, Plaintiffs entered into additional contracts with Defendants notwithstanding their allegations that Defendants were in breach of other contracts. (*See* Dkt. Nos. 17-2, 17-10, 17-17). Plaintiffs failed to raise any further complaints regarding Defendants' advertising activities on their website or in Charleston Home + Design, of which they were indisputably on notice. Rather than acting as a reasonably diligent person would in enforcing their rights, Plaintiffs waited nearly five years to file this lawsuit. Permitting Plaintiffs to raise a

slew of breach of contract claims against Defendants now would be plainly inconsistent with their conduct post-dating the April 2, 2018 cease-and-desist letter and contrary to equity. As a result, the Court determines that Plaintiffs waived their breach of contract claims.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' motion for summary judgment. (Dkt. No. 54). This action is **DISMISSED** with prejudice.

**AND IT IS SO ORDERED.**


       s/Richard M. Gergel
Richard Mark Gergel
United States District Judge

August 6, 2024
Charleston, South Carolina